JOHN S. HAWK, Respondent, v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, January 27 and April 6, 1908.**

1. **PASSENGER CARRIERS: Freight Train: Extraordinary Stop: Demurrer to Evidence.** The evidence relating to the stopping of a freight train whereby a passenger was thrown from his seat onto the floor of a car is reviewed and held not sufficient to send the case to the jury since it fails to show any extraordinarily sudden stop or jolt of the train.

2. ————: ————: ————: **Negligence.** A sudden and violent jolt in the stopping of a long freight train will not *ipso facto* raise a presumption of negligence; and passengers on such trains submit themselves to the inconvenience and danger necessarily attending that mode of conveyance.

3. ————: ————: ————: **Evidence.** The mere evidence of a non-expert that a stop was a "terrible shock" or "a severe shock, sufficient to knock the breath out of me," are mere conclusions and possess no probative force.

Appeal from Livingston Circuit Court.—*Hon. Joshua W. Alexander*, Judge.

REVERSED.

*Frank Sheetz & Sons* for appellant.

(1) The court erred in not sustaining the demurrer of the appellant to the evidence. Hedrick v. Railroad, 195 Mo. 104; Portuchek v. Railroad, 101 Mo. App. 52; Guffey v. Railroad, 53 Mo. App. 462; Erwin v. Railroad, 94 Mo. App. 291; Bartley v. Railroad, 148 Mo. 140. The physical facts show that it was impos-

sible for the plaintiff to have been injured while he was sitting and the verdict cannot stand. Phippin v. Railroad, 196 Mo. 343; Petty v. Railroad, 179 Mo. 678. Neither courts nor juries are bound to stultify themselves by giving credence to such testimony. Payne v. Railroad, 136 Mo. 583. (2) The court erred in not granting the defendant a new trial, because the verdict was against the evidence, and could not be sustained under the physical facts detailed by all the witnesses. (3) The doctrine of *res ipsa loquitur* does not apply. Hedrick v. Railroad, 195 Mo. 121; Erwin v. Railroad, 94 Mo. App. 297; Trotter v. Railroad, 122 Mo. App. 415. The plaintiff charged in his petition specific acts of negligence, and the burden is on him to prove them, and the above doctrine cannot apply. McGrath v. Transit Co., 197 Mo. 105.

*Scott J. Miller,* with *Arthaud & Arthaud,* for plaintiff.

(1) The judgment is for the right party and should not be disturbed. (2) The injury was shown to have been caused by error of the carrier in operating its train. Coudy v. Railroad, 85 Mo. 85. (3) The instructions construed together are harmonious, and give the correct law to guide the jury, on both plaintiff's and defendant's theory. (4) No errors were committed in the admission of testimony. Authorities cited by appellant. (5) This court will not pass on the weight of the testimony, or which side the jury should believe. Coudy v. Railroad, 85 Mo. 85; and a long line of decisions from this case to date.

JOHNSON, J.—This is an action by a passenger against a common carrier to recover damages resulting from personal injuries alleged to have been caused by the negligence of the carrier. Verdict and judgment were in favor of plaintiff in the sum of $958 and defendant appealed.

On the morning of August 31, 1904, the plaintiff purchased a ticket from defendant's agent at Chillicothe which entitled him to ride to Hamilton, and became a passenger on a freight train on which passengers were permitted to ride. The train consisted of an engine and twenty cars, fourteen of which were equipped with air-brakes. At Breckenridge, an intermediate station, the train was run on a side track for another train to pass and, in stopping, the forward motion of the caboose was arrested so suddenly that plaintiff was thrown to the floor and injured. Thus far the parties agree on the facts. Plaintiff, who was seventy-five years old at the time of the injury, testified that he was seated on the north side of the car in a seat running lengthwise. The train was headed to the west and plaintiff had his face turned toward the door at the east end of the car. While in this position, he was thrown from his seat by what he describes as a "terrible shock, sufficient to knock a man off his seat and knock him senseless for awhile." He fell to the floor with his head toward the southwest, striking the back of his head with sufficient violence to render him unconscious. Further, he said concerning the nature of the stop: "Well, it just appeared a severe shock, sufficient to knock the breath out of me. It would have knocked a dog down, I guess. Q. How, Mr. Hawk, did it affect the caboose? A. I can't tell that, because it affected me first, struck me so I didn't know anything. Q. Did you notice any slacking of the train prior to this time, prior to the shock? A. I heard the rattle of it like it usually is. Q. As compared with other stoppings of a train, how was this stopping or shock? Defendant objects to the question because this witness does not show that he is any expert in that regard whatever.

By the Court. He can state whether it stopped suddenly or not.

A. Very much so.   Q.   Explain what you mean
by 'very much so.'   A.   A very severe shock."

Plaintiff, who is a farmer, did not claim to possess
any expert knowledge relative to the usual and ordinary
manner of operating and stopping freight trains and did
not attempt to say that the stop made in this instance
was extraordinary, *i. e.*, not one incidental to the proper
and usual operation of that class of trains.   He intro-
duced as a witness a Mr. Knoop, a traveling salesman,
who testified that he was a passenger on the train; and
that before it came to a full stop he left his seat and
proceeded to the rear platform of the caboose and was
standing on the step waiting for the car to stop when its
sudden halt caused him to step to the ground.   He said:
"Well, as near as I could tell you, why I was standing
there waiting on the train to stop, when the train did
stop.   Of course, I was just holding with one hand, with
my grip in the other, and it threw me and I simply step-
ped off on to the crossing there.   Q.   Did it jerk you
off?   Didn't it shake you off?   A.   I got off there.   I
wouldn't want to swear that it shook me off or that it
didn't."

He alighted in safety and, hearing that someone was
hurt inside the car, returned in time to assist in raising
plaintiff from the floor.   Counsel for plaintiff tried very
hard, but unsuccessfully, to obtain the statement from
the witness that the stop was unusual.   We quote from
his testimony:

"Q.   The question is whether this was an unusually
violent stop.   Go ahead, Mr. Knoop.   A.   I should say
that this was a little more sudden than any stop made
on the way over there on that trip.   The question will
lead me to my experience on freight trains.   All the
experience I have is as a passenger, and while being in
the traveling business I make it a point to look after my-
self wherever I am.   Q.   Was this stop over there more
violent than the ordinary stop of freight trains on which

you ride? A. Well, I could say this, they don't always stop as sudden as they did that time. By the Court: Was it more violent than ordinarily? A. I don't know whether I should call it a violent stop. It was a very sudden stop."

The witness was excused and afterward recalled by plaintiff when the following examination occurred:

"Q. I will ask you was this or was it not more severe, violent or sudden than ordinary stops that you experience in traveling on freight trains? Objection. "Q. Yes, or no? A. Yes, but— By the Court: Explain it if you wish to. A. All I was going to say was that this stop, I don't think it was just exactly an ordinary stop. I experience a good many sudden stops on a freight train and this was one of them and this was a sudden stop as I said awhile ago."

Defendant introduced as witnesses the train men and two colored men who were passengers on the car. All of these witnesses state that before the car came to a stop plaintiff left his seat and proceeded to the east door where he stood looking toward the east and with his hand on the door jamb, when the sudden stopping of the train threw him backward to the floor. No other person on the car was thrown off his balance, though all were standing, and no damage to the car or its contents resulted. Defendant's witnesses say that the cessation of the car's forward motion was no more sudden or violent than that ordinarily experienced in the handling of freight trains. There is no evidence of any defect in the road, the engine and cars or their equipment, nor of negligence on the part of the trainmen in handling the train, unless we should say that an inference of negligence reasonably may be drawn from the fact that plaintiff was injured in the manner he describes.

At the close of the evidence, defendant requested the court to give the jury a peremptory instruction to find for the defendant. The refusal of such instruction

is the principal ground assigned for a reversal of the judgment.

In determining the question whether or not a demurrer to the evidence should have been sustained, we shall view the facts in evidence in the aspect most favorable to the cause of action asserted. Therefore, we shall assume that plaintiff remained in his seat until the shock occurred and was suddenly and violently thrown to the floor thereby. And, further, that the stop was accompanied by a jolt of some severity, but with these facts conceded, plaintiff still has fallen short of making out a case to go to the jury. The rules and principles of law applicable to cases of this character have been before the courts of last resort in this State so often that it is not necessary to do more than recite them. "A railway company assuming to carry passengers for hire upon its freight trains is bound to exercise the same degree of care as is required in the operation of regular passenger trains, the difference being that a passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance." [Guffey v. Railway, 53 Mo. App. 462.]

It is a matter of common knowledge that in starting and stopping such unwieldy trains, sudden jolts and jars of varying degrees of violence are ordinary incidents even where such trains are handled with the greatest care. As such occurrences cannot be avoided in the exercise of due care, the rule is well settled that passengers assume the risk of injury by them as one of the perils of travel by that mode of conveyance. The fact that a sudden and violent jolt or jar accompanies the stopping of a freight train *ipso facto* will not raise a presumption of negligence. A passenger injured thereby to be entitled to recover from the carrier, must go further: He must adduce facts from which an inference of negligence fairly arises. [Hedrick v Railway, 195 Mo. 104.]

The case just cited is decisive of the one in hand. It

is there said: "When it is considered that it is a matter of common knowledge that in the movement of trains there is more or less jolting and jerking incident to the starting and the stopping of the train, and that, so far, human skill and ingenuity have not been able to prevent this entirely, it cannot be said as a matter of law that negligence can be predicated upon the mere fact that the jolt or jerk results from the stopping of a long freight train. It is well settled that negligence cannot be presumed when nothing is done out of the usual course of business, unless the course is improper. There is nothing in this record to indicate that there was any act of omission or commission not usually incident to the constant moving of heavy freight trains under the control and management of skillful and careful employees. We are not unmindful of the contention of the plaintiff that the defendant jerked or knocked or bumped the train with unusual, unnecessary and extraordinary force against the caboose, but we are clearly of the opinion that in the light of the uniform expressions of this court and of the several appellate courts, the evidence in this case was wholly insufficient to establish any such unusual and extraordinary jarring and jerking."

We do not find any evidence in the record before us from which it may be said with reason that the jolt which accompanied the stopping of the train was extraordinarily violent. Plaintiff depicts it as a "terrible shock," "a severe shock, sufficient to knock the breath out of me," but these expressions of a non-expert witness amount to nothing more than mere conclusions and possess no probative value. [Guffey v. Railway, supra; Hedrick v. Railway, supra]. The facts that no one else on the car was overthrown and that nothing in the car was disturbed, strongly support the testimony of all of the witnesses except plaintiff that the stop was not extraordinary. The burden was on plaintiff to show by evidence the fact that the stopping of the car was so sud-

den and unusual that it bespoke the existence of negligence on the part of the engineer. His own witness, the traveling salesman, admitted that in riding on freight trains he had often encountered jolts of equal violence and we think his testimony is quite convincing of the fact that the jolt in the present instance was one of the ordinary incidents in the operation of a long train and should not be attributed to the negligence of the train men. We cannot agree with plaintiff that the fact that he was seated at the time of the injury is sufficient to raise a presumption of negligence. Doubtless the attitude he assumed in turning his face toward the door contributed somewhat to rendering his position on the seat insecure. But however this may be, the undisputed physical facts demonstrate beyond peradventure that he was unseated, not by a jolt of extraordinary violence, but by one likely to be encountered in travel by freight train.

Plaintiff has failed completely to show the existence of negligence and it follows that the judgment must be reversed. All concur.