CLEMENTINE ROSENWEIG v. ROLLA WELLS, Receiver of United Railways Company of St. Louis, Appellant.

Division Two, June 5, 1925.

1. **APPEAL: Submission: Motion to Set Aside: Newly Discovered Evidence.** A motion to set aside the submission of a law case, after it has been argued and submitted, on the ground of newly discovered evidence impeaching the testimony for plaintiff, cannot be sustained. Even if respondent conceded the truth of every fact stated in the affidavits filed in support of the motion, no such fact could be considered, but in reviewing the sufficiency of the evidence and the correctness of the trial court's rulings this court is confined

wholly to matters appearing in the record proper and in the bill of exceptions, except matters of which it will take judicial notice. Nor can such affidavits be used to create an atmosphere favorable to either appellant or respondent.

2. NEGLIGENCE: Pleading Cause of Action: Sudden and Violent Jerk: Hypothesized as ''Unusual'' in Instruction. A petition charging that defendant caused the electric street car "to stop with a sudden and violent jerk" whereby the passenger was thrown from the platform, states a cause of action without using the word "unusual" or "extraordinary" to further describe the jerk; and an instruction requiring the jury to find that "the street car stopped in an unusual manner" does not, by the use of the word "unusual," broaden the allegation. To charge that such a car was stopped with a sudden and violent jerk is tantamount to charging that it was stopped in an unusual manner.

3. ———: Res Gestae: Statement of Conductor. Where the petition charges that plaintiff was a passenger on an electrical street car and when the car approached the street where she expected to leave it she went to the rear platform preparatory to alighting; that the conductor opened the door before the car was brought to a standstill, and the car was stopped with a sudden and violent jerk, which threw her from the platform down upon the street, it was not error to permit another passenger to testify that the conductor stated immediately after the plaintiff fell that he had opened the door too soon. Where the witness testified that she saw the door was opened before the car stopped; saw the car brought to a sudden stop, which threw plaintiff out, with her feet in the street and her head and body on the platform step; that she got up immediately and ran through the door and across the intervening pavement to the curb, to the assistance of plaintiff, and reached her at the same time the conductor did, which was only a few seconds, probably not exceeding ten seconds, the statement then made by the conductor that he opened the door before the car stopped was res gestae, since it tended to fix the blame upon himself, which was not to be expected unless the statement was uttered spontaneously and before time had intervened for the natural wariness of an employee in his position to assert itself. And the admissibility of the statement is to be determined by the testimony of the witness, and is not to be tested by the testimony of the conductor who denies making it or of other persons whose testimony if true shows that the witness could not have heard him make it.

4. ———: Pleading and Proof: Paralysis: Numbness: Fracture of Skull: Concussion: Shock to Nervous System. Plaintiff can recover for only such injuries as are alleged. Where the petition alleges that the injuries sustained were bruises and contusions of the

Rosenweig v. Wells.

muscles of the back and hips, fracture of the skull, concussion of the brain and shock to the entire nervous system, resulting in pains and dizziness, impaired vision and a numbness in the left limb, but contains no allegation of paralysis or of injury of any kind to the tongue or vocal cords, testimony tending to show that plaintiff's tongue and left limb were paralyzed, or partially paralyzed, is within the allegations and admissible; particularly so, where the testimony is in effect a statement of the symptoms and an attendant effect of the fracture of the skull and concussion of the brain. Numbness and paralysis of the limb are practically synonymous.

5. ———: Merits of Action: Measure of Damages: Instruction: Permanent Injuries. The extent of the injuries received by plaintiff in a negligence case is within "the merits of the action" within the meaning of the statute (Sec. 1513, R. S. 1919), just as much as are the facts tending to fix upon defendant liability for such injuries; and an erroneous instruction upon the measure of damages, which does not affect the result prejudicially to defendant, will not constitute reversible error, but otherwise it will.

6. ———: Measure of Damages: Permanent Injuries: Instruction: No Substantial Evidence. Plaintiff alleges that she was a passenger on a street car and as it approached her destination she went to the rear platform to alight; that the door was opened before it stopped; that it stopped with a sudden and violent jerk, which threw her down the steps upon the pavement, causing a fracture of the skull and concussion of the brain. The trial occurred two years later; she did not testify, nor had her deposition been taken, because of her alleged physical inability to testify. There was a sharp conflict in the testimony of the experts concerning the existence of a fracture of the skull. Her physician testified that he could not tell whether or not she would get well; that such injuries to the skull sometimes get well in three to five years, and sometimes they do not, and that in his opinion the bony tissue at the place of fracture would be absorbed in time. There was substantial evidence that, before the alleged accident, plaintiff had exhibited, at least to some extent, a part of the symptoms which are now claimed to be symptoms of skull fracture and her other alleged injuries. The evidence that the door of the car was opened before it stopped is conflicting and sharply contradictory, and it appears improbable, though not impossible, that the stopping of a car would throw a person standing on the rear platform nearly at right angles to the direction of the movement of the car along a straight track. The verdict was for ten thousand dollars. *Held*, that an instruction authorizing the jury to allow damages for permanent injuries, if they found any of them were permanent, was prejudicial error, and

cannot be excused on the ground that it was not error materially affecting the merits of the action.

7. ———: ———: Any Permanent Injury. Instructions on the measure of damages should be so framed as to submit to the jury the question of only such. permanent injuries as are alleged in the petition to be permanent.

Citations to Headnotes: Headnote 1: Appeal and Error, 4 C. J. sec. 2578. Headnote 2: Carriers, 10 C. J. sec. 1412. Headnote 3: Carriers, 10 C. J. sec. 1437. Headnote 4: Carriers, 10 C. J. sec. 1420. Headnote 5: Carriers, 10 C. J. sec. 1081. Headnote 6: Carriers, 10 C. J. sec. 1477. Headnote 7: Carriers, 10 C. J. sec. 1477.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Miller*, Judge.

REVERSED AND REMANDED.

*Charles W. Bates, T. E. Francis* and *Edward P. Walsh* for appellant.

(1) The court erred in overruling defendant's demurrer to the petition *ore tenus,* by reason of the fact that the petition counts on the sudden and violent stopping of a street car, but omits the essential constitutive allegation that the stop was made in an unusual manner. Saxton v. Railroad, 98 Mo. App. 494; Laycock v. United Rys. Co., 290 Mo. 350; Elliott v. Railroad, 236 S. W. 17; Guffey v. Railroad, 53 Mo. App. 466; Hawk v. Railroad, 130 Mo. App. 664. (2) The court erred in giving to the jury plaintiff's Instruction 1, as modified by the court, for the reasons that it charged the jury that they must find, as a predicate of recovery, that the street car was stopped in an unusual manner, when no such allegation is set forth in the petition, thereby broadening the issues framed by the pleadings. Degonia v. Railroad, 224 Mo. 564; State ex rel. Natl. Newspapers' Assn. v. Ellison, 176 S. W. 13; Black v. St. Ry. Co., 217 Mo. 672; Beave v. Transit Co., 212 Mo. 331; Tinkle v. Railroad, 212 Mo. 445. (3) The court erred in admitting, over defendant's objection, evidence to the effect that after plaintiff had fallen and while the conductor

was in the act of raising her up, he said he opened the door of the street car too soon, since such alleged statement was not shown to have been made by the conductor within the scope of his authority so as to be binding upon defendant as an admission, and since, also, it was not admissible as part of the *res gestae* by reason of the fact that it was too remote in time from the alleged accident and was not shown to be a verbal act, but, at most, merely the narrative of a past occurrence. Redmon v. Railroad, 185 Mo. 11; Gotwald v. Transit Co., 102 Mo. App. 492; Warbrough v. Lumber Co., 211 S. W. 714; Koenig v. Railway, 173 Mo. 698; Adams v. Railway, 74 Mo. 553; State ex rel. v. Reynolds, 277 Mo. 24; Ruschenberg v. Railroad, 161 Mo. 70. (4) The court erred in admitting, over defendant's objection, evidence that plaintiff's tongue was paralyzed and her left leg was partly paralyzed by reason of the fact that the petition does not plead any such injuries and they are not, and were not shown to be, the necessary result of the injuries pleaded, and hence they are in the nature of special damages and must be specially stated in order to be recoverable items of damages. Hall v. Coal & Coke Co., 260 Mo. 351; Shafer v. Harvey, 192 Mo. App. 502; Hibbler v. Railway, 292 Mo. 23; Fink v. United Rys. Co., 219 S. W. 680; Thompson v. United Rys. Co., 249 S. W. 106; Smith v. United Rys. Co., 227 S. W. 866; Miller v. Dry Goods Co., 223 S. W. 437; Walquist v. Railways, 292 Mo. 41; Johnson v. Railway, 192 Mo. App. 8; Connor v. Railway, 250 S. W. 575. (5) The court erred in giving to the jury plaintiff's Instruction 3, as modified by the court, defining the measure of damages, for the reason that it authorizes the jury to award damages for permanent injuries, when the evidence did not tend to prove that plaintiff's injuries are of a permanent character. Wood v. Railway, 119 Mo. App. 81; Lebrecht v. United Rys. Co., 237 S. W. 112; Perkins v. United Rys. Co., 243 S. W. 224; Steinmann v. Transit Co., 116 Mo. App. 678; Smedley v. Railway, 118 Mo. App. 106; Golby v. Thompson, 207 S. W. 74; Pendenville v. Transit Co., 128 Mo.

App. 603; Gaty v. United Rys. Co., 286 Mo. 521; Illinois Central v. Basham, 209 S. W. 362. (6) The court erred in giving to the jury plaintiff's Instruction 3, as modified by the court, defining the measure of damages, for the reason that it directed the jury, in the event they found for plaintiff, to take into consideration whether any of her injuries are permanent and to award her damages therefor, when the petition does not allege that all of her alleged injuries are permanent, but, on the contrary, specifically alleges that only some of said alleged injuries are permanent. Salmon v. Railroad Co., 181 Mo. App. 414; Hall v. Coal & Coke Co., 260 Mo. 351.

*E. H. Wayman* for respondent.

(1) A petition is good after verdict, which cures all defects and irregularities except where the petition wholly fails to state a cause of action. Anderson v. Lusk, 202 S. W. 306; Laycock v. United Rys. Co., 290 Mo. 344; Lopez v. Hines, 254 S. W. 40. (2) The rule that in order to state a cause of action for the jerking of a freight train or a cable car incident to the stopping of same the petition must state that the jerk was an unusual one does not apply to an electric street car. Laycock v. United Rys. Co., 290 Mo. 344. (3) The use of the word "violent" in characterizing the jerk of the car in coming to a stop is equivalent to the use of the word "unusual." (4) Plaintiff's Instruction 1, by the use of the word "unusual," added nothing to the issues in the case, because a violent jerk is an unusual jerk, and the objection therefore attempts to draw a distinction between words without any practical difference. Pietzuk v. Rys. Co., 289 Mo. 135; Schwanenfeldt v. Street Ry. Co., 187 Mo. App. 588. (5) In order to be admissible as *res gestae* a statement or declaration need not be coincident in point of time with the incident complained of, and the time elapsing between the plaintiff' fall and the statement of the conductor did not render the statement too remote in point of time from the accident to render the

statement inadmissible. Pryor v. Payne, 263 S. W. 982.
(6) The evidence as to the paralyzed condition of plaintiff's left limb was admissible under the allegations of the petition. (7) The other evidence relating to plaintiff's paralyzed condition was offered merely as tending to show symptoms from which experts could testify and the jury could conclude that the plaintiff had suffered the concussion of the brain alleged in the petition, and where evidence is admissible for a particular purpose and is properly limited to that purpose, either by the court or counsel offering the evidence, it is not error to admit it. Slinkard v. Lamb Const. Co., 212 S. W. 64; Yarbrough v. Wisconsin Lbr. Co., 211 S. W. 714; Atkinson v. School of Osteopathy, 199 Mo. App. 251; Brennan v. St. Louis, 92 Mo. 482; Kirby v. Railroad, 146 Mo. App. 304; Sotebier v. Transit Co., 203 Mo. 702. (8) If the defendant apprehended that the evidence, offered merely as tending to show plaintiff's symptoms and as a basis for diagnosis, would be considered by the jury in a light prejudicial to defendant's interest it was his duty to request instructions properly limiting it. Atkinson v. School of Osteopathy, 199 Mo. App. 266; Brennan v. St. Louis, 92 Mo. 488; Rossier v. Met. St. Ry. Co., 125 Mo. App. 164; Sotebier v. Transit Co., 203 Mo. 702; Shore v. Dunham, 178 S. W. 904. (9) There was sufficient evidence from which the jury could legitimately draw the inference that plaintiff's injuries are of a permanent nature. McKee v. United Rys., 237 S. W. 865; Quinley v. Traction Co., 180 Mo. App. 287. (10) Where the verdict is not excessive for the injuries shown by the evidence to have been sustained, judgment will not be reversed, even assuming that an instruction on the measure of damages submits to the jury's consideration an element of damages not shown by the evidence. McKee v. United Rys., 237 S. W. 866; Quinley v. Traction Co., 180 Mo. App. 287; Liljegren v. United Rys., 227 S. W. 925; Lowder v. Kansas City Rys., 221 S. W. 801; McManama v. Railroad, 175 Mo. App. 43; Shinn v. Railroad, 248 Mo. 173; Sec. 1513, R. S. 1919.

DAVID E. BLAIR, J.—Action for damages for personal injuries alleged to have been suffered by plaintiff while she was a passenger upon one of defendant's street cars in the city of St. Louis. From a judgment for plaintiff in the sum of $10,000, defendant has appealed.

While the motion for new trial charged error in the refusal of the trial court to give to the jury a peremptory instruction to find for defendant at the conclusion of all the evidence, no such assignment of error is made in defendant's brief here. We are satisfied that plaintiff made a case for the jury. This obviates the necessity of making a detailed statement of the facts, except as such facts require statement in connection with our consideration of the assignments of error made here.

On November 23, 1921, plaintiff, with her husband and young son, lived at what was then known as Ednell Hotel, at the southwest corner of Delmar Boulevard and Kingshighway in said city. She was a passenger upon an east-bound street car, from which she attempted to alight in front of said hotel at about 5:30 P. M. of that day.

Plaintiff's evidence tended to show that, as the street car approached Kingshighway, she left her seat in the car and went to the rear platform preparatory to alighting; that the conductor opened the door of the car before the car was brought to a standstill, and that said car was stopped with a sudden, violent and unusual jerk, which threw plaintiff from the platform down the steps, with her feet on the pavement, and injured her. Her evidence ended to show that she sustained severe injuries. Plaintiff did not testify at the trial, nor was her deposition taken before said trial, because of alleged physical inability on her part to have her testimony taken.

The evidence offered by defendant tended to show that the street car was brought to a standstill in the usual and ordinary manner, without any sudden, violent or unusual jerk; that the conductor did not open the door until the car stopped; that, after the car had stopped, the plaintiff took hold of the hand-rail and

stepped down into the street, and that, after she was off the car and had both feet upon the pavement, she sat down suddenly upon the step of the car, for some reason not connected with the operation of the car. In other words, the testimony of defendant's witnesses tended to exonerate defendant entirely from any negligence causing the plaintiff's alleged injuries.

There was also a sharp conflict in the testimony relative to a fracture alleged to have been sustained in the right parietal region of plaintiff's skull. X-ray pictures were introduced in evidence. The originals used in the trial were filed here for our examination. Plaintiff's experts testified that such pictures showed a fracture, while experts used by defendant testified to the contrary.

If the jury had believed defendant's witnesses, it would have been amply justified in finding that no such accident occurred and that plaintiff was feigning her injuries, at least in so far as she claimed they were sustained as the result of the accident in question. Since the case was argued and submitted in this court, defendant has filed a motion to set aside such submission. Said motion is supported by affidavits of witnesses who claim to have observed conduct of plaintiff at her home in Chattanooga, Tennessee, indicating that she had practically recovered from any injuries she may have sustained, and also tending to support an inference that her injuries were largely feigned. Affidavits tending to show the contrary have been filed by the plaintiff.

I. The motion to set aside the submission of the case in this court must be overruled. If the plaintiff conceded the truth of every statement made therein, it would not help matters. If the submission should be set aside, there is no way this court could consider the matters set forth in the motion upon a reargument. This is a law case and it is here upon appeal. In reviewing the correctness of the trial court's rulings and sufficiency of the evi-

Submission: Motion to Set Aside.

308 Mo. Sup.—40.

dence, we are confined wholly to matters appearing in the record proper and in the bill of exceptions, unless it be those matters and things of which this court may take judicial notice. [4 C. J. 678, sec. 2578; Dennison v. Kansas City, 95 Mo. 1. c. 430; Bradley v. West, 60 Mo. 1. c. 44; Sheets v. Railroad, 152 Mo. App. 1. c. 382; Fitzmaurice v. Turney, 214 Mo. 628.]

Counsel have not suggested how the alleged newly discovered evidence can avail the defendant in this court. It might be unkind to suggest that the chief purpose of the motion, with its accompanying affidavits, is to create an atmosphere in this court unfavorable to the plaintiff. In passing upon questions properly in the case, we will endeavor to keep ourselves from any such influence.

II.   Defendant orally objected to the introduction of any evidence upon the ground that the amended petition failed to state a cause of action.   The charge of negligence was "that while plaintiff was standing on said rear platform, as aforesaid, the conductor Pleading: in charge of said car carelessly and negli-Instruction: Sudden and gently opened the door thereof while the Violent Jerk. same was in motion and while plaintiff, as aforesaid, was standing on said platform, and the agents or servants of said defendant carelessly and negligently caused said car to stop with a sudden and violent jerk while plaintiff was standing on said rear platform and while the door of said car was open, as aforesaid, whereby plaintiff was caused to and did fall from the rear platform of said car to the street on said Delmar Boulevard."   The court overruled defendant's objection to the introduction of testimony and exception was saved.

The question is whether the allegation that defendant negligently stopped the car "with a sudden and violent jerk" is sufficient without alleging that such jerk was *unusual*. The same question is raised by the assignment of error that the court modified, and gave as thus modified, plaintiff's Instruction No. 1, so as to require

the jury to find "that the street car was stopped in an unusual manner, when no such allegation is set forth in the petition, thereby broadening the issues framed by the pleadings." We will consider the two assignments together.

It is the general rule that the instructions may not be broader than the petition. Cases cited by defendant well enough support this rule. [Degonia v. Railroad, 224 Mo. 564, 1. c. 589; State ex rel. v. Ellison, 176 S. W. (Mo. Sup.) 11, 1. c. 13; Beave v. Transit Co., 212 Mo. 331, 1. c. 351.] If the allegation that defendant's servants negligently stopped the street car "with a sudden and violent jerk" is broad enough to include the word "unusual," then the instruction was not broader than the petition and the giving of Instruction No. 1, as modified, was not error. Even though the meaning of the word "unusual" is not embraced within the words "sudden and violent," yet, if the sudden and violent stopping of the car constituted actionable negligence, the petition stated a cause of action.

To support his contention that the word "unusual" is an "essential constitutive allegation," defendant cites Saxton v. Railroad, 98 Mo. App. 494; Laycock v. United Railways Co., 290 Mo. 1. c. 350; Elliott v. Railroad, 236 S. W. 17; Guffey v. Railroad, 53 Mo. App. 463, 466, and Hawk v. Railroad, 130 Mo. App. 658, 664.

In the Saxton case, the train was a passenger train of several cars, drawn by a steam locomotive. The ruling went off largely upon the insufficiency of the evidence to show an unusual or extraordinary jerk, rather than upon the insufficiency of the allegation that defendant negligently caused the train to "jerk suddenly and quickly and with great force." The court of appeals evidently deemed the allegations insufficient, however, as it said: "The sufficiency of this allegation may be well questioned. It seems to us that it should have been alleged that the jerk was extraordinary, or more than a usual and inevitable incident to the acceleration of the speed of the train under the circumstances."

The Laycock case does not support the contention of defendant, but is really authority supporting the sufficiency of the petition in the case at bar. The allegation there was that defendant negligently "permitted and allowed the same to move with a sudden and unexpected jerk," etc. SMALL, C., there said: "We think these al· legations are sufficient, after verdict, to state a cause of action. To move a crowded electric street-car with a sudden and unexpected jerk with such force as to throw some one inside of the car against the glass entrance-door, breaking the glass therein and causing the same to strike plaintiff in the eyes and in his face, greatly injuring him, is, in substance and effect, to allege facts showing an extraordinary and unusual movement of such a car. The cases cited by learned counsel for appellant, of jerks, of no greater force than that alleged in the petition, on cable cars or freight trains, do not apply to this case, because there is a wide difference between the jerks and lurches of cable cars and freight trains necessarily incident to their operation and the jerks and lurches incident to the operation of an electric street car."

The Elliott case was for an injury occurring upon a passenger train drawn by a steam locomotive. It involved no question of the sufficiency of the petition. The negligence charged was general, under the view that the rule of *res ipsa loquitur* applied. What was there said concerning unusual or extraordinary jerk was with reference to the sufficiency of the evidence.

In the Guffey case, the plaintiff was injured, while riding as a passenger in a caboose of a freight train of about thirty cars, by reason of a sudden and violent jolt or jerk in stopping the train, which threw the brakeman upon plaintiff. The petition alleged that defendant operated this train "in such a careless and negligent manner as to suddenly and with great force and violence stop said car," etc. There was no discussion of the sufficiency of the petition. It was held that the evidence did not

show a jerk or jolt which was extraordinary or not usually incident to the operation of freight trains.

The Hawk case involved the sufficiency of the evidence and not of the petition. Plaintiff was riding as a passenger in the caboose of a long freight train. Because more or less jerking and jolting are incident to the operation of long freight trains, it was held that it was necessary to show that the jerk or jolt was unusual, as well as sudden and violent.

With the exception of the Saxton and Laycock cases the cases cited by defendant were not ruled on the pleading. All of the cases, except the Laycock case, were steam railroad cases, and some of them involved the movement of long freight trains. Manifestly, a sudden and violent jerk caused by the taking up of slack in a long train, whether freight or passenger, might be the usual incident of the operation of such trains in a careful manner. The same considerations do not enter into the operation of an electric street car. This distinction is clearly pointed out in the Laycock case. To stop an electrically operated street car so suddenly and violently as to throw off of the car and into the street a passenger standing upon the platform, is tantamount to charging that the car was stopped in an unusual manner. The Laycock case is a very late case by the Court in Banc and is controlling here.

The allegations of the petition were sufficient to state a cause of action and were broad enough to let in proof that the car was stopped in an unusual, as well as in a sudden and violent, manner, and the instruction, requiring the jury to find that the car was stopped in an unusual as well as a sudden and violent manner, did not broaden the issues made by the pleadings. Assignments of error as to the sufficiency of the petition and the propriety of said instruction are overruled.

III. Mrs. McGowan, a witness for plaintiff, was permitted to testify to a statement made by the conductor of the street car, immediately after plaintiff fell, to the effect that he had opened

**Res Gestae.**

the door of the car too soon. This testimony was admitted by the trial court upon the ground that it was part of the *res gestae*. Complaint is made of this ruling.

Mrs. McGowan testified that she was sitting in the lobby of the hotel looking through a large plate glass window and saw plaintiff leave her seat in the rear of the car and go to the platform, as the car approached Kingshighway. She testified that she saw the door was opened before the car stopped and saw the car brought to a sudden stop, which threw plaintiff out with her feet in the street and her head and body on the step of the car. Witness got up immediately and ran out through the door and across the sidewalk and intervening pavement to the assistance of plaintiff and reached her at the same time the conductor got to her. It was then that the declaration, to which she testified, was made by the conductor. According to her testimony, Mrs. McGowan was the first person, except the conductor, to reach the plaintiff, and it was immediately upon their contemporaneous arrivals that the declaration was made. Only a few seconds elapsed between the time witness saw plaintiff fall until the alleged declaration was made.

The admissibility of the declaration must be determined by the testimony of Mrs. McGowan and cannot be tested by the testimony of the conductor, who denied making it, or by his testimony and that of several other persons to the effect that Mrs. McGowan never came to the car at all and did not even reach the curb line, until the conductor and plaintiff's son had assisted plaintiff to that point. In other words, whether or not the conductor made the declaration, was a question for the jury.

In Redmon v. Railroad, 185 Mo. 1. c. 11, cited by defendant, the opinion does not show under what circumstances or how long after the occurrence of the accident the statement of the conductor was made. Referring to the statement, GANTT, P. J., said: "On its face it is a narrative of what had happened and the cause

thereof, and elicited by a question as to the cause of the trouble.''

In Gotwald v. Transit Co., 102 Mo. App. 1. c. 495, the petition alleged, and apparently the evidence tended to prove, that the conductor threw plaintiff off the street car for failure to pay his fare. A witness was permitted to testify that while plaintiff was lying in the street, a cry to stop the car was made and the conductor then said, ''I am not going to stop the line for a man.'' This alleged statement was held not to be part of the *res gestae.*

In Yarbrough v. Wisconsin Lumber Co., 211 S. W. (Mo.) 713, cited by defendant, it does not appear how soon after the accident or under what circumstances the declaration of the foreman, held not to be a part of the *res gestae,* was made, further than that it was made ''just after the accident,'' Whether it was practically contemporaneous or some moments thereafter was not stated.

In Koenig v. Union Depot Railway Co., 173 Mo. 698, cited by defendant, the declaration of the motorman, held not to be admissible as part of the *res gestae,* was made ''a minute or two'' after the accident and after the car had gone one hundred to one hundred and twenty-five feet past the point of the accident and the motorman had stopped his car and had returned to the place of the accident. The statement was made in response to a question of a bystander.

In Adams v. Hannibal & St. Joseph R. R. Co., 74 Mo. 553, cited by defendant, the testimony, held not to be admissible as part of the *res gestae,* related to statements made by the engineer and fireman to one another, after the train had been stopped and said employees had returned to the scene of the accident. Some moments must have elapsed.

State ex rel. v. Reynolds, 277 Mo. 14, was not a personal injury case, but cases of that nature were held to be authority. The statement there held inadmissible

was made by the alleged agent a few days after the cause of the action accrued.

Ruschenberg v. Railroad Co., 161 Mo. 70, was a case where the exclusion by the trial court of proof of a statement made by a motorman, was approved, because such statement was not part of the *res gestae*. It is close to the instant case on the facts, in that the motorman had just left the car to assist in extricating the body of deceased from the car wheels. The exclusion of the statement was further sustained because no offer of proof was made and the nature of the motorman's alleged statement did not appear.

In the cases cited by defendant, the time elapsed between the happening of the accidents and the declarations therein considered was longer than in the case at bar. According to the testimony of Mrs. McGowan, not over a few seconds, possibly not ten seconds, elapsed between the time plaintiff fell and the contemporaneous arrivals of Mrs. McGowan and the conductor. It was then that the conductor is said to have stated that he had opened the door too soon.

It was said in Leahey v. Railway, 97 Mo. 165, l. c. 172, "the declaration, to be a part of the *res gestae,* need not be coincident, in point of time, with the main fact to be proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause. The declaration is then a verbal act, and may well be said to be a part of the main fact or transaction. Again, if the subsequent declaration and the main fact at issue, taken together, form a continuous transaction, then the declaration is admissible."

The rule as stated in the Leahey case was quoted with approval by the Court in Banc in Pryor v. Payne, 304 Mo. 560, 263 S. W. 982. In the Pryor case, the declaration of deceased was made four or five minutes after he was struck by the train. The first statement, "I am done for for all time to come," was made before any inquiry was made of deceased. His declaration concern-

ing the cause of his condition was made in response to questions. The entire declaration was admitted under the rule announced in the Leahey case and State v. Martin, 124 Mo. 514.

In the Martin case part of the declaration of deceased was made after he had been carried into a nearby saloon and the officers had arrived. The admission of the testimony, including the entire declaration, was sustained. There GANTT, P. J., quoted from 1 Wharton's Law of Evidence, section 259, as follows:

" 'The *res gestae* may be (therefore) defined,' says Dr. Wharton, 'as those circumstances which are the automatic and undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist, as we will see, of sayings and doings of any one absorbed in the event, whether participant or bystander; they may comprise things left undone as well as things done. . . . In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself.' "

Tested by these principles, we hold that the declaration of the conductor was admissible against defendant. According to the testimony of Mrs. McGowan, the plaintiff had just been thrown violently from the platform of the car to a position partly in the street and partly upon the steps of the car. Seeing this, the conductor hurried to her and, immediately upon reaching her, declared that he had opened the door too soon. No time had intervened for the natural wariness of an employee in his position to assert itself. The declaration tended to fix blame upon himself, which was not to be expected, if the declaration had not been spontaneously uttered.

Some distinction seems to be made between declarations made by the person or employee making the declaration and the injured party, on the apparent theory that one suffering from the shock of sudden injury

is more likely to make a spontaneous declaration than one not so injured. In those cases, much more time will be found to have elapsed than in the instant case. If the declaration is spontaneous and made as a part of the transaction itself, it may be shown whether made by the injured person or the person responsible for such injury, or even if made by a bystander, as said by Dr. Wharton.

The assignment is overruled.

IV. Error is assigned in that the trial court admitted testimony tending to show that plaintiff's tongue and left limb were paralyzed or partially paralyzed, when such injuries were not alleged in the petition. The petition contains no allegation of paralysis at all. It is alleged that there was "numbness" in the left limb. There is no allegation of injury of any character to the tongue or vocal cords. It is alleged that the injuries sustained were bruises and contusions of the muscles of the back and hips, fracture of the skull, concussion of the brain and shock to the entire nervous system and that plaintiff suffered from pains and dizziness and that her vision was impaired.

*Allegata and Probata: Paralysis: Numbness.*

While it is true that paralysis may result from a blow on the head sufficient to fracture the skull and produce concussion of the brain, yet paralysis is not the necessary result of such an injury. It may or may not follow. If a plaintiff seeks to recover for paralysis, caused by such blow, he must allege that such injury ensued as the result of the blow, else he will not be permitted to prove it or recover therefor. [Hall v. Coal & Coke Co., 260 Mo. 351; Moore v. Transit Co., 226 Mo. 689.]

The trial court recognized this rule. Plaintiff's counsel concedes its correctness, but contends that the rule was not violated. We are inclined to think the contention is correct.

The court did permit plaintiff to show, over the objection and exception of defendant, that certain parts of

the body, other than the left limb, were paralyzed and thereupon the following occurred:

"THE COURT: In that connection, though, I will rule that any permanent injury, due to any nervous shock or paralysis, is confined to the lower left limb, as far as this jury is concerned, because there is no allegation to any other part of the body.

"MR. WAYMAN: There is an allegation that she received a shock to her nervous system.

"THE COURT: Yes, but there was some little intimation that there was a numbness in the side.

"MR. WAYMAN: The court does not take judicial notice of the fact that paralysis is not caused by nervous shock.

"THE COURT: I will not permit, in the guise of getting paralysis into the record, to show a numbness of the lower left leg, and then extend it up and show a general paralysis of all parts of the body. As far as paralysis is a symptom of a nervous shock it is proper to show it, but about permanent injuries there is none pleaded to any other part of the body except the lower left limb.

"MR. WAYMAN: The witness will show this particular paralysis was caused by an injury to the brain.

"THE COURT: You are entitled to show how far the nervous shock extended, and the injury to the central nervous system, but that part goes in without objection, but I was limiting, by way of caution, the effect of this so-called paralysis upon other members of the body except the left leg; that is the only one that is pleaded.

"MR. WALSH: Then the statement about the side being numb may be stricken out?

"THE COURT: Yes.

"MR. WALSH: And the jury instructed to disregard it?

"THE COURT: They are so instructed."

Later when the witness referred to the paralyzed tongue and partly paralyzed limb the objection was renewed and the following occurred:

"MR. WALSH: I object to the reception in evidence of the paralyzed tongue and partly paralyzed limb, because paralysis is not pleaded in the petition.

"THE COURT: He is only speaking of them there as symptoms from which he inferred a fracture of the skull, which is pleaded. The objection is overruled.

"To which ruling of the court, defendant then and there duly excepted and still continues to except.

"MR. WAYMAN (continuing): 'Q. Partly paralyzed left limb, you mean? A. Yes, sir.'

"MR. WALSH: Now, I would like to have the same objection entered as to that question and answer.

"THE COURT: The same ruling.

"MR. WALSH: I ask that both answers be stricken out.

"THE COURT: Overruled.

"MR. WALSH: As far as it refers to paralysis.

"THE COURT: Overruled.

"To which ruling of the court, defendant then and there duly excepted and still continues to except."

Another instance of the same sort is quoted in defendant's brief, but it is apparent that the trial court permitted the proof only as a symptom attendant upon and tending to show fracture of the skull. The jury was told to limit the proof of paralysis to the left leg.

We think the allegation of numbness of the left leg is sufficient to let in proof of paralysis in that member. The New Standard Dictionary defines "numbness" as "the state of being numb or without feeling; torpor; paralysis." Webster's New International Dictionary defines "numb" as "enfeebled in or destitute of the power of sensation and motion." The trial court in effect held, and, we think, properly so, that "numbness," in the sense used in the petition, and paralysis, are practically synonymous terms. The trial court was careful to limit the purpose for which proof of paralysis could be considered by the jury. The defendant did not see fit to present a more definite instruction. The instructions given did not refer to paralysis as an element

in the assessment of damages.  The assignment is there-
fore overruled.

V.   The giving of Instruction No. 3, as modified,
is assigned as error.   The instruction authorizes the

**Permanent
Injuries.**

jury to allow damages for permanent injuries,
if it found any of them were permanent.  De-
fendant contends that there is no proof of
such permanent injury.   Plaintiff's counsel apparently
concedes that there is no direct proof of such permanent
injury by his argument that the jury had a right to find,
from the nature and character of the injuries and the
condition of plaintiff proven, that permanent injury ex-
isted.   Counsel makes the further argument that, even
considering that there was no direct evidence of perma-
nent injury, the judgment should not be reversed unless
such error materially affected the merits of the action.
[Sec. 1513, R. S. 1919.]

The extent of the injuries sustained is within the
"merits of the action" just as much as the facts tending
to fix the liability of the defendant for such injuries.  An
erroneous instruction upon the measure of damages,
which we could say did not affect the result prejudically
to defendant, would not constitute reversible error.

Other than the continuance over a space of two years
of the painful, distressing and probably serious condi-
tion of the plaintiff, counsel has pointed out no direct
evidence in the record tending to show that any of plain-
tiff's injuries are of a permanent character.  Counsel
said:

"Plaintiff's doctor testified that he had done all he
could do for her; that his only hope of her getting well
was by the only treatment he could give her; that if this
failed there was no remedy other than a trephining oper-
ation, which is inadvisable and dangerous, and that,
hanging on as plaintiff did, sometimes cases of this char-
acter get well in from three to five years and sometimes
they do not."

There is no showing that the physician did not hope for a recovery without the necessity of plaintiff undergoing the "inadvisible and dangerous" trephining operation.

Dr. Taylor, who testified for plaintiff by deposition, upon direct examination, said:

"Q. Well, what is your prognosis of this case, doctor? Are you able to give us a prognosis of it; what you think its ultimate result will be? A. Well, I cannot say whether she will get well or not; hanging on, they sometimes get well in three to five years, and sometimes not. I would not want to say.

"Q. What is your hope of her getting well, aside from removing this pressure by operation? A. By absorption.

"Q. By absorption of what? A. That bony tissue.

"Q. Is that your opinion that that bony tissue will absorb in time? A. I think it will.

"Q. But how long you cannot say? A. I cannot say, no, sir."

In view of Dr. Taylor's testimony that three to five years might elapse before recovery, if recovery occurred, and the fact that only two years had then elapsed, it is difficult to understand how the jury could still have inferred permanent injuries from plaintiff's condition. She was about thirty years of age at the time of the trial, and therefore had not reached an age in life where recovery from injury is at all unlikely.

There is substantial evidence in the case that, before the alleged accident, plaintiff had exhibited, to some extent at least, a part of the same symptoms which are now said to be symptoms of skull fracture and other injuries. There is a sharp conflict in the testimony of the experts concerning the existence of a fracture of the skull. There was substantial evidence offered by defendant that X-ray pictures show no such fracture. In this situation, we cannot say that the submission to the jury of the per-

manent nature of the alleged injuries did not prejudice the rights of the defendant.

While we have held, and have no doubt of the correctness of such holding, that a case was made for the jury; yet, this is a close case upon the question of the happening of an injury to plaintiff at all and particularly upon the question of the liability of defendant therefor. Theoretically, an erroneous instruction on the measure of damages should have no effect upon the determination by the jury of the question of liability, as that proposition should be settled first and independently of any consideration of damages. Nevertheless, the experience of lawyers and trial judges is that the seriousness of the injury does have an influence, improper though it be, in persuading the ordinary jury that liability exists, when such jury would very likely return a verdict for defendant, upon the same evidence touching defendant's liability, if the injuries were trivial.

Here we have a case where plaintiff's testimony was not before the jury and the only witnesses—we can only recall Mrs. McGowan and E. J. Cannon—who testified to the sudden stopping of the car and the opening of the car door before the car was stopped, were inside the hotel, possibly fifty or sixty feet away, and looking through the large plate glass window. The motorman, both conductors and two disinterested passengers, testified that there was no such sudden stopping of the car.

We do not say that it is impossible, but it does at least appear improbable, that the sudden stopping of the street car, as plaintiff's witnesses testify, would throw a person, standing upon the rear platform, in a direction nearly at right angles to the course of the movement of the car along a straight track. There is no showing of anything to cause plaintiff to fall in a direction other than that in which the car was moving.

The foregoing considerations prevent us from holding that the error in the instruction upon the measure of damages, by authorizing allowance for permanent injury, did not result prejudicially to the rights of de-

fendant in this case and necessitates the reversal of the judgment.

VI. Complaint is also made of Instruction No. 3, on measure of damages, because it authorized the jury to consider whether *any* of plaintiff's injuries were permanent, while the petition only alleged that *some* of the injuries, to-wit, the injuries to the nervous system and the left limb were permanent. Without lengthening this opinion further in considering this contention, we think that, if there is evidence upon a re-trial authorizing a submission to the jury of the permanent nature of any of the injuries claimed, ordinary prudence will suggest to counsel that the instruction on measure of damages be framed so as to submit to the jury the question of permanent injuries only as to such injuries as are alleged in the petition to be permanent. Such course will avoid this question upon re-trial. It is obviously unnecessary for us to notice it further at this time.

Any Permanent Injury.

VII. The final contention is that the verdict for $10,000 is excessive. In view of the reversal of the judgment for other reasons, it becomes unnecessary to notice this assignment.

The judgment is reversed and the cause remanded. All concur.