No. 34,294

James W. Wilson, *Appellant,* v. The Union Pacific Railroad
Company, *Appellee.*

(90 P. 2d 1115)

Opinion filed June 10, 1939.

*John R. Parsons,* of Wakeeney, for the appellant.

*T. M. Lillard, O. B. Eidson, Philip H. Lewis,* all of Topeka, and *W. H. Wagner,* of Wakeeney, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: Plaintiff brought this action for damages for alleged injuries sustained while riding on a stock shipper's pass on defendant's freight train.

Defendant's demurrer to plaintiff's petition was sustained on the ground that it did not state a cause of action. Plaintiff appeals.

The propriety of the trial court's ruling turns on the pertinent statute, which in part reads:

"That all freight trains to which a caboose is attached shall be obliged to transport, upon the same terms and conditions as passenger trains, all passengers who desire to travel thereon and who are above the age of fifteen years, or who, if under fifteen years, are accompanied by a parent or guardian or other competent person, but no freight train shall be required to stop to receive or discharge any passenger at any other point other than where such freight train may stop; nor shall it be necessary to stop the caboose of such trains at the depot to receive and discharge passengers: *Provided,* That on such trains the railroad companies shall only be liable for their gross negligence: . . ." (G. S. 1935, 66-275.)

In his petition plaintiff alleged that on September 26, 1936, one Jack Zeigler shipped a carload of livestock over defendant's railway from Wakeeney to Kansas City; that Zeigler hired plaintiff as caretaker; that plaintiff received from defendant a shipper's contract

which entitled him to ride on its freight train to Kansas City. He alleged—

"That the said contract was the ordinary contract of that date used by defendant in the transportation of stock for shippers and granted to the shipper the privilege of having a caretaker with his stock as part of the consideration which the shipper paid for the transportation of his stock."

Plaintiff also alleged that pursuant to that contract he entered defendant's caboose and rode in it to Ellis, at which place the freight train stopped, whereupon—

"This plaintiff entered upon the couch of defendant in said car and was reclining thereon, when the defendant's employees without any notice to this plaintiff started said train violently with a violent and quick motion and by said violent and quick motion threw this plaintiff with great force against the arm of the seat on which plaintiff was reclining, causing this plaintiff a serious internal injury."

Plaintiff's petition narrated in detail the extent of his injuries and the consequent pain he suffered and still suffers, and the medical bills he has incurred, and added—

"This plaintiff says further that said injuries were caused wholly on account of the negligence of the defendant as aforesaid set out and not on account of any negligence of the plaintiff."

Read in the light of the statute quoted above, can it be said that plaintiff's petition stated a cause of action? It will be noted that under the circumstances in which plaintiff was riding on defendant's freight train, the railway company was only liable for gross negligence. Does the petition allege facts constituting gross negligence? Plaintiff says that without notice the train started with a violent and quick motion. Plaintiff does not allege that such starting of a freight train "without notice" is negligence. He does not allege that the freight train could have been started without the violent and quick motion alleged, nor that such violent and quick motion was so unusual or unnecessary as to constitute negligence of any degree. (10 C. J. 975-976.) But even so, the statute declares that it is only for gross negligence that a railway company shall be liable to a passenger on a freight train. In *Jones v. Railway Co.*, 98 Kan. 133, 157 Pac. 399, this court reversed a judgment awarding damages to a would-be passenger on a freight train who had charged it with negligence in starting its train without announcement or signal, giving him no opportunity to buy a ticket, inviting him to get aboard while the train was moving, in operating the train so that it jerked as he tried to get aboard, and in failing to help him to get on the

moving train. In the opinion of this court, written by the late Mr. Chief Justice Johnston, it was said:

"It is not expected, nor does the law require, that a carrier shall provide for passengers traveling on a freight train the safeguards and the conveniences ordinarily provided for travelers on passenger trains. . . . Freight trains, as all know, are mainly used for carrying freight, and there are many hazards on such trains that travelers are not subjected to on passenger trains. One who chooses this means of travel must be held to have done so with a knowledge of the hazards and inconveniences incident to the operation of such trains. . . . Our legislature, however, has fixed the measure of care to be exercised by a railroad company carrying passengers on freight trains, as well as the measure of its responsibility to passengers who may be injured while traveling on such trains." (p. 135.)

The same opinion discusses the statute enacted by our legislature on the subject of who may be received as passengers on freight trains, and under what conditions, and the measure of the railway company's responsibility towards them, and continues:

"Persons above fifteen years of age, as well as those younger who are accompanied by guardians or competent attendants, may elect to take the risk of traveling on a freight train, but the legislature has said that those who venture on such trains have no right to ask more than slight care and can hold the carriers for nothing less than gross negligence." (p. 136.)

In *Hawk v. Railroad*, 130 Mo. App. 658, 108 S. W. 1119, it was said:

"It is a matter of common knowledge that in starting and stopping such unwieldy [freight] trains, sudden jolts and jars of varying degrees of violence are ordinary incidents even where such trains are handled with the greatest care. As such occurrences cannot be avoided in the exercise of due care, the rule is well settled that passengers assume the risk of injury by them as one of the perils of travel by that mode of conveyance. The fact that a sudden and violent jolt or jar accompanies the stopping of a freight train *ipso facto* will not raise a presumption of negligence. A passenger injured thereby to be entitled to recover from the carrier, must go further: He must adduce facts from which an inference of negligence fairly arises." (p. 663.)

In 2 Hutchinson on Carriers, 3d ed., 1155-1157, a railroad's liability of a person riding on a "drover's pass" is thus stated:

"In the transportation of live animals, it is usually provided by the contract that the shipper, or someone in his behalf, shall go with them on the journey to attend to their wants and protect them from injury, and that, for this purpose, such person shall be furnished with free transportation on the train with the animals to their destination and with return carriage to the starting point, usually upon a passenger train. Such carriage is not gratuitous, and the person so carried is entitled to protection as a passenger both while going and re-

turning; . . . He is only a passenger, however, in a restricted and modified sense, for he assumes such risks and inconveniences as . . . are characteristic of the vehicle upon which he is carried. To the extent that such risks and inconveniences interfere with the operation of ordinary rules of liability, the duty of the carrier is accordingly modified."

See, also, *Binder v. Railroad Co.*, 108 Kan. 47, 194 Pac. 314.

An examination of the citations in appellant's brief reveals nothing at variance with the rule announced in the Jones case, *supra*, nor in the cyclopedias which treat of this subject. (13 C. J. S. 1410-1412; 4 R. C. L. 1153-1155.)

The judgment is affirmed.