68 U.S. 721 (1863)
1 Wall. 721
ROMERO
v.
UNITED STATES.
Supreme Court of United States.

*730 Mr. Carlisle, for the appellants.
Messrs. Bates, A.G., and Black, contra.
*737 Mr. Justice CLIFFORD delivered the opinion of the court.
This was a petition for the confirmation of a land claim, under the act of the 3d of March, 1851.
Appellants presented their petition to the commissioners appointed under that act on the twenty-eighth day of February, 1853, claiming title to a certain rancho, situated in Contra Costa County, in that State, and also to certain unoccupied lands adjacent to the same, describing the tract as a sobrante, or overplus beyond what belonged to the neighboring rancheros.
Copies of some of the supposed title-papers were filed at the same time with the petition, and the petitioners stated in the petition that the originals would be produced and proved. Allegation of the petition is that the grant was made by Governor Micheltorena in the year 1844; but there is no profert of the grant in the petition as an existing document, nor does the petition contain any averment of its loss. Commissioners rejected the claim as invalid, upon the ground that no such grant was ever issued by the governor.
Claimants appealed from that decree, and the case was duly removed into the District Court. Further evidence was there introduced, and after a full hearing the decree of the commissioners was affirmed. Motion was then made by the petitioners to open the decree for a rehearing, and for leave to take further testimony, and both branches of the motion were granted by the court. Additional evidence was accordingly introduced, and the parties were again fully heard. Hearing on this last occasion was before the circuit and district judges, sitting in bank, under the sixth section of the act of the second of March, 1855; and after the hearing, the court reaffirmed the former decree rejecting the claim, and *738 declaring it invalid. Whereupon the petitioners appealed to this court, and now seek to reverse the decree upon the ground that the parol evidence proves the existence and authenticity of the grant, and that the finding of the court in that behalf was and is erroneous.
I. Evidence introduced by the appellants to prove their claim may properly be divided into three classes; and it is important to preserve that classification and keep it constantly in view, in order to appreciate its force and effect, and rightly apply it to the issues involved in the controversy.
First, it consists of certain documents bearing date during the Mexican rule, and which, if authentic, are properly denominated Mexican documents. Secondly, it consists of certain depositions introduced to prove the existence of the alleged grant and its subsequent loss, and that diligent search was made for it without success; and also to prove the contents of the lost document. Thirdly, it consists of certain documents bearing date during the military occupation of the department by the United States, and, of course, after the Mexican rule had ceased.
Appellees insist that no such grant was ever issued by the Governor of California, and the appellants do not pretend that the transcript furnishes any direct record evidence to establish the affirmative of that proposition. They set up no such pretence; but their theory is that the grant, when it was issued, was delivered to the party, and that it was subsequently lost, and they, as before remarked, rely chiefly upon the parol proofs in the case to establish those facts as a foundation to admit secondary evidence of the contents of the grant. But they also contend, in the same connection, that the documents introduced in evidence as Mexican documents, show that the original application for the grant was favorably received by the governor, and consequently that those documents tend strongly to confirm the parol proofs that the grant was actually issued. Counsel for the United States deny that proposition, and insist that the documents, as a whole, show conclusively that the governor never issued any such grant.
*739 Consideration will first be given to the documents bearing date during the Mexican rule, because the title to the land, as claimed by the appellants, was derived from the Mexican government. They are as follows:
1. A petition signed by the claimants, and dated at Monterey, on the eighteenth day of January, 1844, wherein they solicit a grant of a certain tract of land described as the sobrante of three adjacent ranchos.
2. Connected with the petition is a marginal decree of the same date, directing the secretary to report upon the subject, "having first taken such steps as he may deem necessary."
3. Certificate of the secretary, also of the same date, that the governor directs the first alcalde of San José to summon the occupants of the adjacent ranchos and hear their allegation, and make report of his doings.
4. Report of the alcalde, under date of the first of February of the same year, to the effect that the rancheros mentioned and the petitioners had been confronted, and that the former made no objections to the application. But he also reported that it had come to his knowledge that one Francisco Soto, six or seven years before, had claimed the same tract.
5. Four days after that document was filed, the secretary reported to the governor that it would seem, according to that report, that there was no obstacle to the making of the grant.
6. On the twenty-eighth day of the same month, however, the governor entered a decree directing the judge of the proper district to take measurement of the land in presence of the adjacent proprietors, and that he "certify the result, so that it may be granted to the petitioners."
7. Second petition of the claimants, under date of the twenty-first of March, 1844, in which they stated that the judge of San José had never been able to execute the order of survey on account of the absence or engagements of the adjacent proprietors, and asked that the governor would grant the tract to them, provisionally, or in such manner as *740 he should deem fit. Prior documents, it seems, were in the possession of the claimants at the time of the second application, because they state that they are inclosed with the petition for the action of the governor.
8. Transcript contains no order of reference of the second petition, but the secretary, two days after its date, made a report to the governor expressing the opinion that the former order of survey ought first to be carried into effect, and when the survey should be made, his suggestion was that the prior claimant and the petitioners should be confronted, in order that the governor might be able to "determine what is best."
9. Final decree of the governor is in the words following, to wit: "Let everything be done agreeably to the foregoing report," which concludes the list of documents embraced in the first class. Argument is unnecessary to prove that those documents afford no evidence that a grant or concession of any kind was ever issued by the governor to these claimants. On the contrary, the documents, as a whole, fully show that up to the date of the last-named decree, no such grant had ever been issued. Survey of the tract was first to be made, and the parties supposed to be opposed in interest were then to be summoned and heard, as preliminary conditions to the hearing of the application. Record furnishes no evidence of a reliable character that either of those conditions was ever fulfilled. Evidence to show that the survey was made is entirely wanting. First-named claimant was examined as a witness, and he testified that the pretensions of the prior claimants were overruled and abandoned; but the explanations given by him, in view of the documents in the case, are not satisfactory.
II. Reliance, however, is more especially placed upon the parol proofs, which will next be considered, because they were introduced to prove the existence of a grant issued under the Mexican authority. Claimant's theory on this branch of the case is that the grant, notwithstanding what appears in the last-named decree, was actually issued by the governor in the year 1844, and was delivered to the first-named *741 petitioner, and that he retained it in his possession for a period of six years; that in 1850 the said petitioner was a party defendant to an ejectment suit then pending in the county court for the county where the land lies, which involved the title to a portion of the tract; that in defending the suit it became necessary to introduce these title-papers, and that being sick and unable to attend at the trial of the cause, he sent the title-papers, including the grant, to be used in that trial, to his attorney, and that the grant was never returned.
Such is the present theory of the claimant, but when the party who had possession of the papers was first examined he testified that he sent the papers to the attorney "for the purpose of having them submitted to the Land Commission," which would make the transaction bear date at a much later period. Deposition of the attorney was also taken, and his account of the matter sustains the present theory of the claimant. First deponent was then re-examined, and in his second deposition his recollection is substantially the same as that of his attorney, but he expressly states that the papers, when sent, were loose sheets, not sewn together, and his account of the transaction shows that he had no very definite idea what the package contained. He was asked what title-papers he sent to his attorney, and his answer was that he sent the title-papers pertaining to the grant given to him by the governor. Whereupon he was asked what title-papers were given to him by the governor, to which the witness replied, in effect, that he could not describe the number of the papers; that he made the petition and got the different papers usually issued at the government office, "such as the map, petition, informe, and decrees."
Responsive to a leading question, he stated that he obtained the grant in the month of March, 1844, but he gave no account of the attending circumstances, except that the pretensions of the prior claimant were settled and overruled by the governor. Another of the claimants was also examined as a witness, but he testified without any qualification that all they obtained from the governor was an order *742 of survey, that they did not obtain a grant, and that the land was never measured under the order of the survey. Two Mexican officials, Francisco Arce and Vicente P. Gomez, were also examined as witnesses. Arce was principal clerk under the secretary of the governor. He testified that an order was passed directing the grant to issue, and that it was written out by a clerk in the office and signed by the governor and secretary, and delivered to the party, but he could not state which of two persons named wrote it, nor when it was issued, whether in the spring, summer, fall, or winter of the year. No such order as that mentioned is produced, and there is nothing in the record to confirm the statement of witness that any such order was ever made. According to the testimony of the other witness, he also was a clerk in the office of the secretary. His statements are to the effect that he knew the claimants petitioned for the tract, but he admits that he did not see the grant, although he says he afterwards knew that it was issued.
When pressed to explain how he knew the grant was issued if he did not see it, his answer was that he thought he took the "Toma de Razon," which undoubtedly is an error, as there is no evidence in the case that the records for that year contain any such entry, or that there is any such entry in the Index of Jimeno. Absence of such proof goes very far to contradict the witness, as it may be presumed if such evidence existed it would have been produced. United States v. Teschmaker, 22 Howard, 405; United States v. Neleigh, 1 Black, 298.
Speaking for the whole court, Mr. Justice Nelson said, in the case first named, "The memorandum therefore, at the foot of the grant by Arce, the secretary, `Note has been made of the decree in the proper book on folio 4,' is untrue. Nor has there been found any approval of the grant by the Departmental Assembly, for those records are extant and found in the Mexican archives." "Those archives," say the court in that case, "are public documents which the court has a right to consult even if not made formal proof in the case."
Attorney of the claimant in the ejectment suit was also *743 examined and testified that the grant was among the papers sent to him to be used in that trial, and that the signatures to the document were genuine. Witnesses were also examined who had seen the papers in the hands of the principal claimant, and heard him speak of them as the title-papers in this case, and another class who say they examined them, and still another class who say they read them or heard them read, and became convinced they were genuine. Papers were last seen in the hands of an attorney at law at San José, and the testimony of the claimants tends to show that he was insane. Such is the substance of the parol testimony, except what relates to the search for the document, which need not be more particularly noticed.
III. Congress recognized the existence of war between Mexico and the United States on the thirteenth of May, 1846, and this court has more than once decided that the official functions of the Mexican officers in California ceased as early as the seventh day of July of that year. United States v. Castillero, 2 Black, 149.
Civil officers in that department, after that date, were such as were appointed by our military commanders. Bearing these facts in mind, we will proceed to the examination of the other documents introduced in evidence.
1. Alcalde of San José, for the year 1847, found in his office an additional order of survey, signed by Jimeno, of the same date as the before-mentioned final order of the governor. Mistaking the nature of his authority, and thinking it to be the same as that of the former governor, the alcalde, on the ninth day of April of that year, passed an order authorizing the claimants to take possession of the land in controversy, premising that if any adjacent land-owner demanded it, the tract must be measured.
2. On the twenty-eighth day of May, 1847, one of the claimants addressed a petition to the alcalde of San José. representing that as early as 1844, an order from the former government had been sent to that Jusgado, requiring a measurement of the land called Juntas, and that such measurement had not been made. Based upon those representations, *744 his request was that the claimants might be furnished with a testimonial of the report sent at that date to the government, "so that we can be granted said land," and the marginal order entered by the alcalde directs that the land shall be measured according to the original order of the former government. They asked a testimonial of the report sent to the former government, and measures were taken to comply with their request.
3. Former alcalde was designated to collect the information, and on the following day he reported to the alcalde that the adjacent proprietors declared that the surplus of the tract not belonging to them could be granted.
4. Case also shows that nearly four months prior to that report, one of the claimants and Maria Garcia, appeared before the same alcalde to execute a conveyance, in the presence of two assisting witnesses, to confirm a sale by the former to the latter of one-half of the tract, and stipulating in the conveyance that both parties should "remain subject to the final result, if the government grant it in ownership, and if the contrary should be the case, then the grantee should lose equally with the grantor without any right to reclaim the consideration paid."
Both the commissioners and the District Court were of the opinion that these documents establish beyond doubt that the action of the former government in this case terminated with the before-mentioned order of survey, and in that view of the subject we entirely concur. Taken separately, the parol evidence, if competent, might possibly justify a different conclusion, but it is clear that it must be weighed in connection with the documentary evidence, and when so considered the conclusion is irresistible that no grant was ever issued by the governor. Suppose it be conceded, however, that the probative force of the parol testimony is not overcome by the contrary tendency of the written evidence, the concession could not benefit the claimants, because the case is one where there is no record evidence of any kind to prove either the existence or authenticity of the grant. Assuming that state of the case, then, it falls directly within the *745 class of cases where confirmation has been refused, because there was no record evidence to support the claim. United States v. Cambuston, 20 How., 59; United States v. Teschmaker, 22 Id., 392; Fuentes v. United States, 22 Id., 443; United States v. Osio, 23 Id., 280; United States v. Bolton, 23 Id., 341; Luco et al. v. United States, 23 Id., 515; Palmer et al. v. United States, 24 Id., 126; United States v. Castro, 24 Id., 346; United States v. Neleigh, 1 Black, 298; United States v. Knight, 1 Id., 229; United States v. Vallejo, 1 Id., 541; United States v. Galbraith, 2 Id., 394.
But the present case, in one respect, is much stronger than any one of those which have preceded it. All of the preceding decisions rest upon the ground that there was an entire want of record evidence to support the claim, but in this case the record evidence itself, if there be any, shows that the supposed grant was never issued. Our conclusion, therefore, is, that the decree of the District Court is correct, and it is accordingly
AFFIRMED.