Appellee, by Dennis McCarthy, chairman of the Illinois State Legislative Board, filed complaint against the appellant before the Illinois Commerce Commission, charging that "said defendant, New York Central Railway Company, has failed to provide adequate washing facilities, shower baths, toilets and lockers for their engineers, firemen and hostlers at Englewood roundhouse, Chicago, Illinois, so as to safeguard the health of such employees and the public." Appellant filed answer denying that appellee was entitled to relief. Appellee does not appear to have been represented by counsel at the hearings which were held, and the proceedings in appellee's behalf were conducted by McCarthy and Richard Abrams. The commission subsequently entered an order against appellant, and this order was sustained by the circuit court of Cook county. The case is here on appeal
The "opinion and order" of the commission contains statements which explain the general nature of the circumstances involved, and inasmuch as the decision of the case necessarily turns upon the content of this opinion and order it is quoted herewith:
"On February 23, 1926, the Brotherhood of Locomotive Firemen and Enginemen, by Dennis McCarthy, chairman Illinois State Legislative Board, filed complaint against the New York Central Railway Company as to its failure to provide adequate washing facilities, shower baths, lockers and toilets for engineers, firemen and hostlers at Englewood roundhouse, Chicago, Illinois, as required in the commission's general order No. 15080 respecting such facilities. *Page 203 
Hearings were held in this matter at the office of the commission in Chicago on December 1, 1926, December 14, 1926, January 11, 1927, February 23, 1927, and at the office of the commission in Springfield, April 20, 1927, both parties being present and represented by counsel at these hearings.
"The evidence shows that the respondent maintains a two-story brick building adjacent to their Englewood roundhouse. On the first floor they have 174 steel lockers, 12 X 18 X 40, five wash-bowls, four toilets, two urinals, no shower baths, and the space was crowded owing to the number of men employed. Owing to the crowded condition, 28 of the 174 lockers were located in the hallway of the building. On the second floor of said building there are 140 steel lockers, 12 X 18 X 40, the dimension of the room being 22 X 29 feet. Adjacent to this room is the sleeping room for the engineers, in which about sixty cots were located. The toilets and urinals were located on the first floor. About 350 men used these facilities during the peak time.
"Following the first two hearings of this case a joint conference was held on December 27, 1926, at the request of the attorney for the respondent, at which conference representatives of the Brotherhood of Locomotive Firemen and Enginemen, the New York Central Railway Company and the Illinois Commerce Commission were present. At this time a memorandum was drawn up and agreed upon between the representatives of the Brotherhood of Locomotive Firemen and Enginemen and of the New York Central Railway Company as being necessary to properly safeguard the health of said employees and the public. The memorandum is as follows:
" 'In compliance with request of New York Central's attorney, Mr. Flott, the following representatives held a meeting to-day at 1:00 P. M. to look over the washroom facilities at Englewood engine house and make the necessary *Page 204 
recommendations: Dennis McCarthy, representing the Brotherhood of Firemen and Enginemen, R. Abrams, representing the Brotherhood of Railway Trainmen, L.C. Stade, Illinois Commerce Commission representative, F.J. Speakman, general roundhouse foreman, A.D. Webb, representing Mr. Fenno's office, and F.F. McCarthy, district superintendent of motive power. After looking over the facilities and the room available it was decided that in order to properly take care of the conditions of the complaint filed by the committee it would be necessary to have the following facilities: Space sufficient to house 314 lockers, together with wash-trough having twelve spigots, necessary room for four toilets, two urinals and three showers, the plan as agreed to to be worked up by Mr. Webb and to be submitted for approval at a meeting to be held at 10:00 A. M. on January 10, in Mr. Speakman's office.'
"The record of this case shows this memorandum was drawn by F.F. McCarthy, superintendent of motive power, A.D. Webb, representing the engineering department, and F.J. Speakman, general roundhouse foreman of the New York Central Railway Company, as a compromise agreement reached between them and Dennis McCarthy, representing the Brotherhood of Locomotive Firemen and Enginemen.
"The commission having given due consideration to the said complaint and to the evidence introduced at the hearings of the matter and being duly advised in the premises, is of the opinion and finds
"(a) That the washroom and other facilities provided and now being maintained by the New York Central Railway Company at their Englewood roundhouse at Chicago, Illinois, are inadequate and insufficient for the purpose intended.
"(b) That through conferences and investigations the parties hereto have come to an understanding and agreement whereby certain suggested improvements, if carried *Page 205 
out, will satisfy the complaint, these improvements being embodied in the memorandum bearing date of December 27, 1926, and entered as evidence and read into the records of this case.
"(c) That the respondent railway company should be required to carry out the aforesaid improvements within a reasonable time.
"It is therefore ordered by the commission that the New York Central Railway Company, at its own expense and within thirty (30) days from the date of service of this order, be and the same is hereby required and directed to carry out or cause to be carried out the improvements to its quarters for enginemen and firemen at or near its Englewood roundhouse at Chicago, Illinois. Said improvements to consist of sufficient space for 314 lockers and accommodations for those using same, wash-trough with twelve (12) spigots, four (4) toilets, two (2) urinals and three (3) shower baths.
"It is further ordered that the New York Central Railway Company shall make a report in writing to the secretary of the commission of the date upon which said improvements at its Englewood roundhouse at Chicago, Illinois, have been completed and whether same have been installed in full accordance with the order of this commission."
Appellant's first contention is that the Illinois Commerce Commission had no jurisdiction over the subject matter of the complaint here involved. In support of this contention appellant argues that nowhere in the statute concerning public utilities is any definite or specific authority given the commission to regulate the washroom, locker, toilet and shower bath facilities of public utilities; that the Illinois Commerce Commission act was enacted at the same session of the legislature as the Washroom act; (Cahill's Stat. 1929, chap. 48, pars. 175-179;) that the Commerce Commission act is a general statute, whereas the Washroom act is a *Page 206 
special statute; that the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment; and that the subject matter of the present proceeding was consequently governed by the Washroom act to the exclusion of the power of the Commerce Commission to deal therewith.
In spite of the fact that the commission's order in the within proceeding must be set aside on other grounds, it would be desirable and proper to deal squarely with this assignment of error if it could be done, to the end that the parties might be fully advised as to the propriety of re-opening the matter upon remandment. However, with the exception of matters of which this court may take judicial notice, its consideration is confined to what is found in the record of the case under review. (Farmer v. Fowler, 288 Ill. 494.) The most that can be said here is, that it is not apparent, either from the findings of the commission or the evidence in the record, that the existing conditions of employment bring the subject matter of the present proceeding Within the terms of the Washroom act. (People v. Cleveland, Cincinnati, Chicago and St. Louis RailwayCo. 288 Ill. 523.) We cannot here pass upon the question that would be presented if the conditions of employment in the present case were shown of record to be within the terms of the Washroom act, and, because of the necessary disposition of the case as hereinafter indicated, it will be apparent that under this record we cannot pass upon the power of the Commerce Commission to make orders in due legal form for the installation of washrooms and such other facilities as are mentioned in the present record.
Section 65 of the Illinois Commerce Commission act (Cahill's Stat. 1929, chap. IIIa, par. 84,) requires that the commission make and enter findings of fact concerning the subject matter inquired into and base its order thereon. This court has construed this act as an imperative requirement *Page 207 
that the commission make findings of fact upon the principal issues in the case, and if such findings are lacking the order is ineffective. (Chicago Railways Co. v. Commerce Com. 336 Ill. 51; Business Men's Ass'n, v. Commerce Com. 337 id. 149; WichitaRailroad and Light Co. v. Public Utilities Com. 260 U.S. 48.) If the order of the commission is not sustained by the facts upon which it is predicated the court cannot enter into an independent investigation of the facts in order to evolve new and substantive findings of fact upon which the order of the commission might be sustained. (Atchison, Topeka and Santa FeRailway Co. v. Commerce Com. 335 Ill. 624.) In order that the courts may intelligently review the decisions of the commission the latter must make its findings sufficiently specific to enable the courts to determine whether such decisions are based on such findings, otherwise the courts would be helpless in their efforts to determine that question. Business Men's Ass'n
v. Commerce Com. supra.
One of the findings of the commission in the present case deals with an "understanding and agreement" between appellant and appellee; the other is a general finding that present facilities "are inadequate and insufficient for the purpose intended." The order is that "the improvements" be carried out, and "said improvements" are declared "to consist of sufficient space for 314 lockers and accommodations for those using same, wash-trough with twelve (12) spigots, four (4) toilets, two (2) urinals and three (3) shower baths."
If appellant agreed or stipulated to make certain changes in keeping with the purport of the complaint there would seemingly be no reason why the Commerce Commission could not make a finding that there was such agreement and upon such finding enter an order requiring the terms of such agreement to be carried out. At first glance it might appear that the within order is based upon a finding of an agreement entered into by appellant. However, the *Page 208 
special finding is "that through conferences and investigations the parties hereto have come to an understanding and agreement whereby certain suggested improvements, if carried out, will satisfy the complaint." Clearly this cannot possibly be construed as a finding that appellant agreed to do anything. It is merely a finding that appellee would be satisfied if certain things were done. The finding then proceeds: "These improvements being embodied in the memorandum bearing date of December 27, 1926." Referring to this memorandum the following language is found: "In compliance with request of the New York Central's attorney, Mr. Flott, the following representatives held a meeting to-day at 1:00 P. M. to look over the washroom facilities at Englewood engine house and make the necessary recommendations: Dennis McCarthy, representing the Brotherhood of Firemen and Enginemen, R. Abrams, representing the Brotherhood of Railway Trainmen, L.C. Stade, Illinois Commerce Commission representative, F.J. Speakman, general roundhouse foreman, A.D. Webb, representing Mr. Fenno's office, and F.F. McCarthy, district superintendent of motive power. After looking over the facilities and the room available it was decided that in order to properly take care of the conditions of the complaint filed by the committee it would be necessary to have the following facilities: Space sufficient to house 314 lockers, together with wash-trough having twelve spigots, necessary room for four toilets, two urinals and three showers, the plan as agreed to to be worked up by Mr. Webb and to be submitted for approval at a meeting to be held at 10:00 A. M. on January 10, in Mr. Speakman's office." The unmistakable purport of the memorandum is that neither appellant nor appellee agreed to be bound by anything definite until appellant's engineer had "worked up" the plan and it was put in concrete form, at which time, two weeks later, it was to be taken up "for approval." Therefore the commission did not in its specific findings find that appellant *Page 209 
had agreed to make the changes ordered. It follows that the order cannot be supported on any theory of agreement.
If it be claimed that the purport of any other portions of the commission's opinion is that an agreement to do the things ordered was found, it must be said that any such finding is directly contrary to the evidence set out in the opinion itself and cannot be allowed to stand. Commerce Com. v. Cleveland,Cincinnati, Chicago and St. Louis Railway Co. 309 Ill. 165.
In the absence of agreement, if the order is to be supported it must be upon the finding "that the washroom and other facilities provided and now being maintained by the New York Central Railway Company at their Englewood roundhouse at Chicago, Illinois, are inadequate and insufficient for the purpose intended." This is only a conclusion of law. The inadequacy of such finding to sustain the order is established by Chicago Railways Co. v. Commerce Com. supra, where the Commerce Commission had made a finding to the effect that "public convenience and necessity" required the operation of motor busses over certain streets in the city of Chicago. This court said that such finding was not a finding of fact on which any order granting a certificate of public convenience and necessity could be based but was simply a conclusion drawn from all the evidence, without any finding of fact upon which the conclusion could be reached. The commission's order not containing the necessary findings of fact it was held void. The same situation is presented here. The finding in question affords no way of knowing upon what basis the commission found that existing facilities are inadequate. It does not enable the courts to know upon what basis the commission related the changes ordered to existing needs. The insufficiency of this finding will be further evident upon consideration of the decisions of this court in Public Utilities Com. v. SpringfieldGas Co. 291 Ill. 209, Northern Illinois Traction Co. v.Commerce Com. 302 id. 11, *Page 210 
and Atchison, Topeka and Santa Fe Railway Co. v. Commerce Com.supra.
Nor is the situation bettered if other portions of the commission's opinion not designated as "findings" be construed as such. There is a paragraph to the effect that "the evidence shows that the respondent maintains a two-story brick building adjacent to their Englewood roundhouse. On the first floor they have 174 steel lockers, 12 X 18 X 40, five wash-bowls, four toilets, two urinals, no shower baths, and the space was crowded owing to the number of men employed. Owing to the crowded condition, 28 of the 174 lockers were located in the hallway of the building. On the second floor of said building there are 140 steel lockers, 12 X 18 X 40, the dimension of the room being 22 X 29 feet. Adjacent to this room is the sleeping room for the engineers, in which about sixty cots were located. The toilets and urinals were located on the first floor. About 350 men used these facilities during the peak time." The court cannot gather from this any definite basis upon which the commission held existing facilities inadequate in their relation to the "health of employees and the public," nor is any satisfactory relationship apparent between a supposed existing need and the present order.
The findings of the commission not being sufficient to support the order entered, such order is consequently void.
Even though the question of sufficiency of the findings be left entirely out of consideration, unless the Commerce Commission be held to have power to make and enforce orders characterized by a very marked degree of indefiniteness the present order cannot be sustained, and in view of the possibility of further proceedings upon remandment it is in order to call attention to this deficiency. Appellant is first ordered to carry out "the improvements." Presumably this refers to the improvements outlined in the memorandum of December 27, 1926, but in which it was specifically stated that the plan should be "worked up" for *Page 211 
further consideration. The order then proceeds: "Said improvements to consist of sufficient space for 314 lockers and accommodations for those using same, wash-trough with twelve (12) spigots, four (4) toilets, two (2) urinals and three (3) shower baths." It appears from the opinion itself that there are already 314 lockers in place. What is meant by "sufficient space" as distinguished from what must be "sufficient space" already provided? Appellee's representatives in their testimony spoke of blue-prints of a new building, submitted at the conference with assurance that it would be recommended to the company, and there were apparently alternative ideas about enlarging the old building. Granting that the order requires an increase in space, and referring to the testimony for light upon what was really contemplated thereby, its indefiniteness is thus only emphasized. The further question comes as to what is meant by "accommodations for those using same." What are "accommodations for those using" the "sufficient space for 314 lockers?" Here, again, talk in the testimony about "rest room facilities" only emphasizes the indefiniteness of the provision.
Counsel for appellee suggests that although this order might be vague and uncertain to a lawyer, "engineering questions usually are vague and uncertain to the lawyer," and that if this court affirms the order appellant's engineers "will find the engineering questions involved quite simple." It is not for this court to weigh the question of the simplicity of this order as it might appear to a member of the engineering profession. Unless it conforms to accepted judicial standards of clarity and definiteness it does not merit judicial sanction. This order does not conform to those standards.
The judgment of the circuit court of Cook county is reversed and the order of the Illinois Commerce Commission is set aside, and the cause is, remanded to the circuit court with directions to remand it to the Commerce Commission *Page 212 
for further hearing, with permission to both parties to introduce further evidence if they be so advised.