STATE ex rel. MURPHY, Com'r of Labor, v. COCA-COLA BOTTLING CO.

No. 30329. May 19, 1942.

*126 P. 2d 86.*

Peyton Ford, Atty., and Bruton Wood, Asst. Atty., for Oklahoma Em-

ployment Security Commission, both of Oklahoma City, for plaintiff in error.

E. F. Maley, of Okmulgee, for defendant in error.

OSBORN, J. This action was instituted in the superior court of Okmulgee county by the State of Oklahoma ex rel. W. A. (Pat) Murphy, Commissioner of Labor, hereinafter referred to as plaintiff, against the Coca-Cola Bottling Company of Okmulgee, hereinafter referred to as defendant. Plaintiff sought recovery of certain contributions, or pay roll taxes, levied by the provisions of chapter 52, Session Laws 1936-1937 (Special Session) known as the Oklahoma Unemployment Compensation Law. By its answer, defendant denied that it was subject to the provisions of said law. The cause was tried to the court and judgment was entered in favor of plaintiff for contributions due for a period beginning with December, 1936, and ending with the first quarter of 1940. The court found that no demand had been made upon defendant for payment of said contributions until March 2, 1940, and held that plaintiff was entitled to interest from that date only and not from the date the contributions were due and payable. The sole question presented in this appeal is whether or not the court erred in refusing to allow interest from the date the contributions were due and payable.

The trial court found that the defendant in good faith believed that it was not subject to the law. It was the theory of defendant that it employed only seven individuals, and under the provisions of subsection f, section 19 of the act, an employer is defined as any employing unit which has or had in employment eight or more individuals. It appears that in determining the number of employees, the defendant failed to take into consideration the president and the vice president of the company, who were also salaried employees, and by including said officers, defendant was an employer within the above definition and therefore subject to the act.

Section 14 of the act, in part, provides as follows:

"Contributions unpaid on the date on which they are due and payable, as prescribed by the commissioner shall bear interest at the rate of 1 per centum per month from and after such date until payment plus accrued interest is received by the commissioner. Interest collected pursuant to this subsection shall be paid into the Unemployment Compensation Fund.

"If, after due notice, any employer defaults in any payment of contributions or interest thereon, the amount shall be collected by civil action in the name of the State of Oklahoma, and the employer adjudged in default shall pay the costs of such action. Civil actions brought under this section to collect contributions or interest thereon from an employer shall be heard by the court at the earliest possible date, and shall be entitled to preference upon the calendar of the court over all civil actions except petitions for judicial review under this act and cases arising under the Workmen's Compensation Law of this state."

Section 9 of the act, in part, provides as follows:

"There is hereby established as a special fund, separate and apart from all public moneys or funds of this state, an unemployment compensation fund, which shall be administered by the commissioner exclusively for the purpose of this act. This fund shall consist of (1) all contributions collected under this act, together with any interest thereon collected pursuant to section 14 of this act; (2) all fines and penalties collected pursuant to the provisions of this act; (3) interest earned upon any moneys in the fund; (4) any property or securities acquired through the use of moneys belonging to the fund; (5) all earnings of such property or securities. All moneys in the fund shall be mingled and undivided."

It is noted that the statute does not purport to fix the dates upon which the contributions are due, but that said dates are to be prescribed by the Commissioner of Labor. It is argued that since the rules and regulations of the

commissioner were not introduced in evidence, and since no date was fixed by statute at which the contributions should bear interest, the court had no alternative but to allow interest from March 2, 1940, the date upon which demand was made upon defendant for payment. The record does not disclose that the conclusion of the trial court was predicated upon the failure of plaintiff to introduce in evidence the rules and regulations prescribed by the commissioner, but upon the good faith of defendant "that it did not fall within the operation of the statute." It is the general rule that the courts will take judicial notice of the rules and regulations of the executive departments of the government. Zevely v. Weimer, 5 Ind. T. 646, 82 S. W. 941, affirmed 138 F. 1006, 70 C. C. A. 683; Allen v. State, 238 Ala. 437, 191 So. 809, 20 Am. Jur., Evidence 44, p. 68, and footnote.

The regulations of the commissioner applicable to the present controversy are as follows:

"The Commissioner accordingly prescribes:

1. The following dates for payment of contributions:

> 1936 by Feb. 15, 1937
> For Jan., Feb., Mar. 1937 by April 30, 1937
> For April, 1937 by May 31, 1937
> For May, 1937 by June 30, 1937
> For June, 1937 by July 31, 1937

"Each month thereafter to and including December, 1938, by the twenty-eighth day of the month following the month to be reported.

"For the year 1939, on or before the 30th day of the month following the calendar quarter to be reported.

"For the year 1940, on or before the 30th day of the month following the calendar quarter to be reported; Provided, however, that contributions with respect to wages in excess of the first $3,000 payable to each individual in employment from each employer with respect to employment occurring during the calendar year 1940, shall be paid on an annual basis on or before the 31st day of January, 1941."

Our attention is directed to certain authorities dealing with legislation similar to that involved here, wherein exactions for delinquency were treated as penalties although the word "interest" was used. See Lally v. State (Tex. Civ. App.) 138 S. W. 2d 1111; Jones v. Williams, 121 Tex. 94, 45 S. W. 2d 130, 79 A. L. R. 983. In the case United States v. Childs, 266 U. S. 304, 69 L. Ed. 299, 45 S. Ct. 110, the court pointed out the difference between penalty and interest. Therein it was said:

"At the outset we are confronted with the difference between penalty and interest. A penalty is a means of punishment; interest a means of compensation. Bouvier defines it to be 'a consideration paid for the use of money or forbearance in demanding it when due'. . . .

"The imposition of a tax is certainly a function of government and creates an obligation, and the power that creates the obligation can assign the measure of its delinquency,—the detriment of delay in payment,—and section 14a has done so in this case, and explicitly done so."

The above authority was approved in the case of Meilink v. Unemployment Reserves Commission of the State of California, decided January 5, 1942, 86 L. Ed. 339, wherein there were involved both statutory and constitutional provisions similar to our own. Therein it was said:

"Petitioner seeks to establish that the twelve per cent exaction here in question is not 'interest' by pointing to article 20, sec. 22 of the California Constitution, which provides that, except for specified institutions, the rate of interest on loans, and on accounts after demand or judgment, shall be seven per cent, and leaves the parties free to contract in writing for a rate not exceeding ten per cent. We do not understand that as a matter of state law the California Legislature was thereby forbidden to prescribe the higher rate here involved. And the mere difference in rate does not establish that the twelve per cent rate is not 'interest' within the means of sec. 57 (j) of the Bankruptcy Act.

"It is common knowledge that interest rates vary not only according to the

general use value of money but also according to the hazard of particular classes of loans. Delinquent taxpayers as a class are a poor credit risk; tax default, unless an incident of legitimate tax litigation, is, to the eye sensitive to credit indications, a signal of distress. A rate of interest on tax delinquencies which is low in comparison to the taxpayer's borrowing rate—if he can borrow at all—is a temptation to use the state as a convenient, if involuntary, banker by the simple practice of deferring the payment of taxes.

"Another variable is the amount necessary to compensate for the trouble of handling the item. The Legislature may include compensation to the state for the increased costs of administration in the exaction for delay in paying taxes without thereby changing it from interest to penalty."

The language of section 14, supra, is clear and explicit to the effect that contributions bear interest at the rate of 1 per centum per month from the date they are due and payable. We have shown that the interest, when collected, becomes a part of the Unemployment Compensation Fund. It seems clear that the measure of delinquency prescribed herein was intended as compensation, not as punishment.

In the absence of ambiguity in the statute, we must hold that the trial court erred in not awarding interest from the due date of said contributions. The statute does not require a demand. In the absence of such requirement no notice or demand for payment need be given. Vol. 3, Cooley on Taxation (4th Ed.) sec. 1243a, p. 2476.

The judgment is reversed and the cause remanded, with directions to enter judgment in accordance with the views herein expressed.

CORN, V. C. J., and RILEY, BAYLESS, GIBSON, and HURST, JJ., concur. WELCH, C. J., and DAVISON and ARNOLD, JJ., absent.