## FRAZIER v. STATE.
### No. A–11880.

Criminal Court of Appeals of Oklahoma.

Oct. 14, 1953.

Rehearing Denied Jan. 7, 1954.

Second Petition for Rehearing Denied
Feb. 3, 1954.

156

George Miller, Jr., Oklahoma City, for plaintiff in error.

Clyde T. Patrick, County Atty., Creek County, Sapulpa, Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error William H. Frazier, defendant below, was charged by complaint in the county court of Creek county, Oklahoma, with the commission of a misdemeanor on December 3, 1952 on U. S. Highway No. 66, five miles north of Sapulpa in the aforesaid county. The complaint in substance alleged that the said defendant was driving an overloaded truck on said highway in violation of the provisions of Title 47, § 116.1, O.S.1951. The defendant waived a jury; the case was tried by the judge who found the defendant guilty, fixed his punishment at a fine of $50 and costs, and judgment and sentence was entered accordingly.

The defendant attacked the sufficiency of the original complaint by motion to quash for insufficiency of facts to constitute an offense. The motion was overruled. Leave was granted to amend. The charging part of the information as amended reads in substance as follows, to wit (The amendment is italicized.):

"That the said defendant, in the County and State aforesaid, on the .day and year aforesaid, did, unlawfully, wilfully and wrongfully drive and operate a certain vehicle, to-wit: One 1952 White Truck, bearing 1952 Oklahoma License No. 409–981, on U. S. Highway 66, five miles north of the .City of Sapulpa, said vehicle being overweight, towit, 1020 pounds; *that said vehicle was a semi-trailer with a group of axles wherein the distance in feet between the extremes, between any group of axles, did not exceed 7 feet, and section 116.1, sub-section 4–b, presents a schedule showing that the maximum load in pounds carried on any group of axles not greater than 7 feet distance in feet between the extremes of any group of axles, will be 32,000 pounds. The said vehicle carried a* weight of 33,020 pounds."

To this complaint as amended, the defendant interposed a demurrer on the ground of insufficiency to state a cause of action, which was overruled, with an exception. The pertinent part of the statute, under which this action was brought, Title 47, § 116.1, O.S.1951, reads as follows:

"Except as otherwise provided by this Act; it shall be unlawful and constitute a misdemeanor for any person to drive, operate, or move, or for the owner to cause or permit to be driven or moved upon any road or highway within this State, whether paved or otherwise, any vehicle or vehicles or combination of vehicles of a size or weight exceeding the limitations stated in this Act, or any vehicles which are not constructed or equipped as required by this Act, or to transport over any road or highway within this State, whether paved or otherwise, any load or loads, exceeding the weights or dimensions prescribed by this Act. * *

"(a) No vehicle or combination of vehicles shall have a gross weight in excess of sixty thousand (60,000) pounds; no vehicle, or combination of vehicles shall have a greater weight than six hundred (600) pounds per inch width of tire upon any wheel concentrated upon the surface of the highway using high pressure tires, and a greater weight than six hundred fifty (650) pounds per inch width of tire upon any wheel concentrated upon the surface of the highway using low pressure tires, *nor any axle load in excess of eighteen thousand (18,000) pounds*. An axle load shall be defined as the total on all wheels whose centers may be included between two (2) parallel transverse vertical planes forty inches (40″) apart.

"(b) No group of axles shall carry a load in pounds in excess of the value given in the following tables corresponding to the distance in feet between the extreme axles of the group, measured longitudinally to the nearest foot:

| Distance in Feet between the Extremes of any Group of Axles | Maximum Load in Pounds Carried on any Group of Axles |
|---|---|
| 4 | 32,000 |
| 5 | 32,000 |
| 6 | 32,000 |
| 7 | 32,000 |
| * * * [etc., up to] | |
| 39 | 60,000." |

The foregoing schedule is identically the same in both the Act of 1947 and the Act of 1949.

 The gist of the offense as alleged in the amended complaint is that the defendant's semi-trailer truck was overloaded on its group of axles to the extent of 1,020 pounds. We are of the opinion the amended complaint is sufficient to apprise the defendant of what he was called upon to meet and good against both the motion and the demurrer. It has been repeatedly held that a charge in a complaint, information or indictment is sufficient where it apprises an accused of the particular offense or crime with which he is charged and enables him to prepare his defense and to protect himself from jeopardy against another prosecution on the same state of facts. Douglas v. State, 57 Okl.Cr. 154, 47 P.2d 215. The true test of the sufficiency of the information is whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. Stokes v. State, 86 Okl.Cr. 21, 189 P.2d 424, 190 P.2d 838. So measured the complaint herein was sufficient.

The evidence in support of the complaint is not in dispute. In substance the state's evidence was that the vehicle in question was composed of two parts, a truck-tractor composed of two axles, a front steering axle, and a back driving axle and a semi-trailer, at the rear of which is a group of two axles. The front of the semi-trailer was fastened on what is known as a fifth wheel with the weight thereof being supported by the rear driving and carrying axle of the truck-tractor. The rear axles of the semi-trailer consisted of two axles with multiple wheels, which arrangement is commonly called tandem axles. All together there are four axles, the steering axle and the three carrying axles, including the driving axle as a carrying axle.

 The Act herein in question was approved on May 31, 1949. A graphic chart prepared and distributed by the Department of Public Safety as a part of the departmental regulation under the law symbolizing the provision of the statute (not contained in the record herewith presented but a matter of judicial notice, the date of the promulgation of said symbols and their dissemination was commenced shortly after June 1949, as reflected on the original engineer's tracing) shows the weight restrictions of vehicle that may be lawfully operated on the highways of Oklahoma. These departments had a right under the statute to make a rule chart setting forth the symbols illustrative of the provisions of said statute. The type of vehicle herein involved is pictured in said chart as set out below within the enclosed rectangles 1, 2 and 3:

Rectangle 1 is a representation of the truck tractor herein involved, with a weight limit on its rear single axle of 18,000 pounds. The semi-trailer herein involved, as pictured in rectangle 2, was a four-wheel vehicle with a weight limit on its axle group of 32,000 pounds; its fore-weight resting on the rear truck tractor

axle fifth wheel as pictured in rectangle 3. This court takes judicial notice that this information was issued as the controlling information relative to such matters in conformity with the Act approved May 31, 1949, more than 3 years before the instant case arose. In view of the statement made by Mr. True, witness for the defendant, "that the Department of Public Safety had never withdrawn the interpretation placed upon this particular question either before or after the passage of the Act of 1949", we felt obliged to the end of justice, to take judicial notice of said matters called to our attention in the supplemental brief of the state. Records in both the Highway Department and the Department of Public Safety establishes the foregoing facts relative to the issuance of the chart prescribing regulations as to weight restrictions of vehicles. It clearly appears that such information has been disseminated since shortly after passage of the Act of 1949 in public meetings held for the purpose of educating those interested relative to the provisions of the Act of 1949, of which we may take judicial knowledge. Greeson v. Imperial Irr. Dist., 9 Cir., 59 F.2d 529, and by means of the issuance and continuous distribution of the hereinbefore set forth chart prescribing said weight restrictions said matters are beyond possibility of dispute. Johnson v. City of Tulsa, Okl.Cr., 258 P.2d 695, not yet reported in State reports.

"It is the general rule that the courts will take judicial notice of the rules and regulations of the executive departments of the government. Zevely v. Weimer, 5 Ind.Terr. 646, 82 S.W. 941, affirmed 8 Cir., 138 F. 1006, 70 C.C.A. 683; Allen v. State, 238 Ala. 437, 191 So. 809, 20 Am.Jr. Evidence 44, p. 68, and footnote." State ex rel. Murphy, Com'r v. Coca-Cola Bottling Co., 190 Okl. 590, 126 P.2d 86, 88; 31 C.J.S., Evidence, § 39, Note 42, p. 600.

"State courts may take judicial notice of the rules and regulations of the various departments of the state government," particularly where the same symbolizes the provisions of the statute. North Pacific Coast Freight Bureau v. Dept. of Public Works, 156 Wash. 137, 286 P. 86.

The state's undisputed evidence, as to the vehicle involved, established the weight of the carrying axles to be 50,720 pounds, and the front steering axles 7,000 pounds or an overall gross weight of the vehicle of less than 60,000 pounds limited by law. The rear single axle of the tractor supporting the forward part of the semi-trailer carried a weight of 17,700 pounds, the evidence disclosed. It further established that the group of axles on the semi-trailer weighed 33,020 pounds or 1,020 pounds (excess weight) for such axles, under the foregoing schedule of weights, § 116.1, Title 47, O.S.1951. These facts are not in dispute. The controversy arises only over an interpretation of the foregoing statute, particularly as related to the permissible weight on a group of axles.

The gist of the defendant's contention is that subsection (4)(a) fixes the permissible load for each individual axle at 18,000 pounds and as long as each axle does not exceed 18,000 pounds he has fully complied with the law, thus entitling him to carry a maximum of 36,000 pounds on the rear or tandem axles of the semi-trailer. He supports his contention with an old communication from the Assistant Commissioner of Public Safety bearing date of February 6, 1948, which reads as follows:

"Department of Public Safety
State of Oklahoma

"J. M. Thaxton H. B. Lowery,
"Assistant Chief of Patrol
Commissioner

"Oklahoma City, Okla.,
"February 6, 1948

"Mr. Rex C. Stiner
"The Trailmobile Company
"2111 South Quannah Avenue
"Tulsa, Oklahoma

"Dear Mr. Stiner:

"The official interpretation of allowable gross weights formerly permitted on tandem axles was 32,000 pounds, 16,000 pounds per axle. You were

correctly informed of this interpretation by Mr. Childress, however there has been a recent alteration.

"On February 3, 1948, in a meeting at this Department, this interpretation was altered due to the ambiguousness contained in House Bill 184 and the apparent conflicts between certain sections and paragraphs of the bill. The allowable weight now permitted on tandem axles (over forty inches apart) is 36,000 pounds, 18,000 pounds per axle; provided, however, that the gross allowable weight on any vehicle or combination· of vehicles is determined by the weight schedule in House Bill 184 on a basis of distance between axles. In other words, the distance between axles (schedule in House Bill 184) will govern the allowable gross weight and in no instance should 18,000 pounds per axle be exceeded.

"You may consider this the official interpretation of the Department of Public Safety concerning House Bill 184. Should this office be able to assist you further please feel free to call upon me.

"Yours very truly,
 "J. M. Thaxton,
 "Assistant Commissioner."

It is unfortunate that such an interpretation as to tandem axles should have been made because it certainly does not conform to the provisions of the law. Nowhere in the law do we find such provision, as applied to a group of axles, such as the semi-trailer axles herein involved. It is apparent that this interpretation was based on the definition of an axle load, defined as:

"An axle load shall be * * * the total on all wheels whose centers may be included between two (2) parallel transverse vertical planes forty inches (40″) apart."

But this provision merely fixes what shall constitute the distributive area of a total axle load on wheels regardless of number and arrangement running across the truck from wheel to wheel, or wheels to wheels and within two imaginary transverse vertical parallel planes extended from side to side of the truck, said planes being 40 inches apart, and within the bounds of which are all the wheels, is a single axle. The total carrying load of such a single axle under the foregoing statute is limited to 18,000 pounds. The law makes no provision further as to any excess weight on such single axles. Such are the clear and unmistakable provisions of subsection (4) (a) of the foregoing statute.

Subsection (4) (b) of said statute prescribes the weight and distances in feet between the extremes of any group of axles, together with the weight limits thereon. Such group of axles are what are known as tandem axles, the minimum distance between which is 4 feet to a maximum of 39 feet. It makes no difference how many tandem axles are involved if they are 4 feet, 5 feet, 6 feet and up to 7 feet apart, the load limit thereof under the plain provisions of the law is 32,000 pounds. We are not here concerned with gross overload of the truck tractor semi-trailer for the gross load was less than 60,000 pounds, nor are we concerned with a single axle overload in excess of 18,000 pounds for the single axle load herein was a total of 17,700 pounds. But we are concerned with a tandem axle load in excess of 4 feet and less than 7 feet, or as testified to, 52 inches, (or) 4 feet and 4 inches, which takes the axle arrangement on the tandem axle semi-trailer herein out of the provisions of subsection (4) (a), Title 47, § 116.1, and brings those axles into the provisions of subsection (4) (b) limiting the maximum load on the tandem or group axles herein involved to 32,000 pounds. The defendant contends this interpretation is unsound, but we are unable to agree with his contention. To so hold would be to read into the statute ambiguity and conflict in the provisions of subsection (4) (a) and subsection (4) (b), which we do not find. We believe these sections are in harmony when properly understood and applied. It is the opinion of the court that axle loads on wheels whose centers can be included between two parallel transverse vertical planes forty inches apart are one axle regardless of the number of axles or of wheels, the load limit of

which is fixed by the foregoing statute at 18,000 pounds, all as set forth and defined in subsection (4) (a), Title 47, § 116.1, O.S.1951. The court is further of the opinion that group or tandem axles whose distance of feet between extremes thereof is not less than 4 feet and not more than 7 feet from the center of said axles are limited to a maximum on such axles of 32,000 pounds. The foregoing provisions of subsection (4) (b), Title 47, § 116.1, O.S.1951, in fact fixes the minimum spacing distance of tandem or groups of axles allowed by law which may be arranged a greater distance apart than 40 inches, but fixes the minimum distance there at 4 feet. It is obvious that the object was to distribute the load on group axles and 4 feet was the minimum distance selected as an appropriate distance to obtain the objective the engineers had in mind relative to preventing highway surfacing failure due to overloading. We are not concerned with the hiatus, or gap between 40 inches for single axle loads, and 4 feet for group or tandem axle loads. The fact is that the legislature fixed this schedule and we are bound by it, as are the manufacturers of and the operators of such truck tractors, semi-trailers, and heavy hauling equipment. It is thus apparent that the vehicle in question being a truck-tractor, semi-trailer type as hereinbefore described had an excess of 1,020 pounds on its group or tandem axles in violation of the provisions of law. In so holding we seek to give vitality to the obvious intent of the lawmakers, to provide size and weight limitations of vehicles, to prevent damage by overloading, and as a result thereof premature deterioration and destruction of the state highways by trucks, tractors, semi-trailers, and heavy hauling vehicles. In so doing we are not bound by the old common-law rule of strict construction, Burks v. State, 64 Okl.Cr. 285, 79 P.2d 619, but by the Oklahoma statutes and decisions are bound to give a liberal and not a technical construction to the foregoing statute. We have sought to arrive at the legislative intent in the ordinary meaning of the words contained in the statute, with regard to the connection in which they are used, and of the evil to be remedied. Couch v. State, 71 Okl. Cr. 223, 110 P.2d 613.

It is next contended by the defendant that "the construction given statutes by administrative officials should resolve any doubts concerning its meaning". The interpretation relied on is the letter of the Assistant Commissioner of Public Safety as set forth supra. It is conceded by the defendant that the Safety Commissioner's office has no final authority in determining the question herein involved. It may be said that where such interpretation is reasonable and not in conflict with the plain provisions of the statute it may have the force of law, particularly if acquiesced in for a long period of time. Ex parte White, 75 Okl.Cr. 204, 130 P.2d 103; Ex parte Himes, 88 Okl.Cr. 78, 199 P.2d 226; Ex parte Olden, 88 Okl.Cr. 56, 199 P.2d 228; Ex parte Burns, 88 Okl.Cr. 270, 202 P.2d 433. But, in the case at bar, it is obvious that the construction placed upon the provisions of § 116.1, O.S.1951, by the Department of Public Safety had not been in force for a long time, for the departmental construction relied on by the defendant was made on February 3, 1948. The statute was amended, effective May 31, 1949, (though the schedule of weights and sizes in § 116.1 was identical with that of the 1947 statute) the interpretation of February 3, 1948 apparently having been deemed out of harmony with the statutory provisions, a new interpretation in harmony with the language of the statute, was issued in June of 1949 in symbolized form, which was given wide publicity, and two sessions of the legislature, the 1951 and 1953 sessions, has passed without legislative interference with said construction and under the foregoing authorities said departmental construction of the provisions of § 116.1, O.S.1951, has the force of law, especially since the same is in harmony with the express statutory provisions. In support of this rule see Maryland Casualty Co. v. U. S., 251 U.S. 342, 40 S.Ct. 155, 157, 64 L.Ed. 297, 302:

"It is settled by many recent decisions of this court that a regulation by department of government, ad-

dressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department; has the force and effect of law if it be not in conflict with express statutory provision. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; United States v. Birdsall, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930 [934]; United States v. Smull, 236 U.S. 405, 409, 411, 35 S.Ct. 349, 59 L.Ed. 641– [643]; United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926. The law is not different with respect to the rules and regulations of a department of a state government."

We would not be justified under the law in following the construction of February 3, 1948, which obviously the Department of Public Safety deemed erroneous, and withdrew, and issued in its stead the construction of 1949, which we believe to be a correct interpretation of the statute. 59 C.J. § 610, page 1031, Note 71; 82 C.J.S., Statutes, § 359; U. S. v. Finnell, 185 U.S. 236, 244, 22 S.Ct. 633, 46 L.Ed. 890. We are of the opinion that the departmental construction of June 1949 is not inconsistent with the language of the statute and the objects therein sought to be obtained, and hence we are bound by said construction. U. S. ex rel. Kreh v. Ingham, 38 App.D.C. 379.

From what we have already said in disposing of the defendant's preceding proposition it is obvious that we are of the opinion the Assistant Commissioner of Public Safety's letter of 1948 was an unfortunate construction, but if that construction had been followed for a long time and had not been changed following the Act of 1949, there might be merit in the defendant's contention. But in the premises, the language employed, the object of the statute, the issuance of a correct construction which has been available to the defendant several years before the violation herein complained of, the defendant's position is untenable. We cannot in good conscience or in keeping with our sworn duty uphold an erroneous and obsolete construction of law, which has been superseded by a correct construction in effect for now more than 4 years. There was some reason to follow the misinterpretation set forth in the Assistant Commissioner's letter in 1948, but certainly none in 1952, under the conditions herewith confronting the court. Persons and concerns, engaged in specialized services, subject to governmental regulation are required, odious as it may be, to keep abreast of the changing regulations. We can hardly believe that a concern such as the Trail-mobile Company of Tulsa, would be approximately three years behind the times in such matters. What we have hereinbefore said covers the defendant's other contention.

For all the above and foregoing reasons the judgment and sentence of the lower court herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.

On Rehearing.

BRETT, Judge.

The defendant in his second petition for rehearing urges that this court cannot take judicial notice of rules and regulations of the Highway and Public Safety Department as set forth in the exemplified graphic interpretation symbolizing the provisions of Title 47, § 116.1, subd. 4 (a) and (b), O.S.1941, as amended in 1949 because there was no reference to the rules and regulations in the record thereof in the trial court. He contends neither the prosecutor nor other parties were cognizant of the promulgation of the symbolized regulations of the statute, and therefore it was not properly before this court on appeal, and cannot be considered by this court. We believe this contention is contrary to the great weight of authority. 3 Am.Jur. 375, § 834.

Every court has the right to take judicial notice from the highest to the lowest. 23 C.J. 172, § 2004, 31 C.J.S., Evidence, § 13; Chiulla De Luca v. Hartford Park Com'rs, 94 Conn. 7, 107 A. 611.

It is generally held that orders and regulations by the political branches of the government, within the scope of their authority, which have the same effect as law will be judicially noticed by the courts. 20 Am.Jur. 67, § 44. And particular cognizance will be taken of the rules, orders, and decisions of the executive departments of the government. Thornton v. United States, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013; Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363; Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U.S. 301, 23 S.Ct. 692, 24 S.Ct. 860, 47 L.Ed. 1064; The Paquete Habana, 175 U.S. 677, 20 S.Ct. 290, 44 L.Ed. 320; Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456; Caha v. United States, 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415; Knight v. United Land Ass'n, 142 U.S. 161, 12 S.Ct. 258, 35 L.Ed. 974; The E. A. Packer, 140 U.S. 360, 11 S.Ct. 794, 35 L.Ed. 453; Heath v. Wallace, 138 U.S. 573, 11 S.Ct. 380, 34 L. Ed. 1063; Richelieu & O. Nav. Co. v. Boston M. Ins. Co., 136 U.S. 408, 10 S.Ct. 934, 34 L.Ed. 398; Coffee v. Groover, 123 U.S. 1, 8 S.Ct. 1, 31 L.Ed. 51; Romero v. United States, 1 Wall. 721, 17 L.Ed. 627; United States v. Teschmaker, 22 How. 392, 16 L.Ed. 353; Lyons Mill. Co. v. Goffe & Carkener, 10 Cir., 46 F.2d 241, 83 A.L.R. 501; Whitney v. Spratt, 25 Wash. 62, 64 P. 919, 87 Am.St.Rep. 738, affirmed in Thayer v. Spratt, 189 U.S. 346, 23 S.Ct. 576, 47 L.Ed. 845. In Peters v. U. S., 2 Okl. 116, 33 P. 1031, it was held that the courts may take judicial notice of the rules and regulations of the General Land Office even though not pleaded or proved.

Generally speaking, an appellate court may take judicial cognizance of any matter of which the court of original jurisdiction may take such notice; but it cannot judicially notice matters which could not have been so noticed by the court below. See also 4 C.J.S. Appeal and Error, p. 1713, § 1212; "Matters of which an appellate court can take judicial notice, in accordance with the rules stated in Evidence §§ 6–102 (23 C.J. p.

58, Note 1–p 174, Note 35), will be considered by such court although they are not incorporated in the record." Brotherhood of Locomotive Firemen & Enginemen v. New York Cent. R. Co., 339 Ill. 201, 171 N.E. 148; Kieselbach v. Feuer, 183 Ind. 582, 109 N.E. 842; Rosenzweig v. Wells, 308 Mo. 617, 273 S.W. 1071; Regenvetter v. Ball, 131 Wash. 155, 229 P. 321, and 4 C.J. 560, Note 66; 4 C.J.S., Appeal and Error, § 1212 and cases cited thereunder. In New York Indians v. U. S., 170 U.S. 1, 18 S.Ct. 531, 539, 42 L.Ed. 927, 938, it was said:

"Our attention has also been called to certain documents emanating from the executive and legislative departments of the government, some of which tend to strengthen the idea that these departments never intended to treat the action of the Indians as a forfeiture of their grant, and acquiesced in the justice of the claims the Indians now make, and have already made under the treaty of Buffalo creek. It is insisted by the attorney general that, as these documents are not referred to in the findings of fact by the court below, this court cannot consider them; but, as they are documents of which we may take judicial notice, we think the fact that they are not incorporated in the findings of the court will not preclude us from examining them, with a view of inquiring whether they have the bearing claimed. Jones v. United States, 137 U.S. 202, 214, 11 S.Ct. 80, (34 L.Ed. 691, 696).

"While it is ordinarily true that this court takes notice of only such facts as are found by the court below, it may take notice of matters of common observation, of statutes, records, or public documents which were not called to its attention, or other similar matters of judicial cognizance."

In Rogers v. Cady, 104 Cal. 288, 38 P. 81, wherein the right of the appellate court to take judicial knowledge of the matter of the location of certain lands covering which no evidence was introduced in the

lower court the California Supreme Court said:

"The county in which lands so described are situated is a matter within the judicial knowledge of the court, and is to be determined by it in the same manner as a legal proposition, and cannot be made an 'issue' between the parties, to be determined by the court, in each case, upon conflicting evidence presented in that case. For the purpose of informing itself the court might inquire of others, or refer to books or documents, or any other source of information which it might deem authentic, but its action in this respect is not a part of the trial of issues in the action. Matters of which a court takes judicial knowledge are uniform and fixed, and do not depend upon uncertain testimony, and the failure or refusal of a trial court to take such notice does not prevent the appellate court from giving proper effect thereto. See Hunter v. New York, O. & W. Railroad Co., 116 N.Y. 615, 23 N.E. 9, [6 L.R.A. 246]."

An appellate court can properly take judicial notice of any matter of which a court of original jurisdiction may properly take notice. In Varcoe v. Lee, 180 Cal. 338, 181 P. 223, 225:

"An appellate court can properly take judicial notice of any matter of which the court of original jurisdiction may properly take notice. Pennington v. Gibson, 16 How. 65, 14 L. Ed. 847; Salt Lake City v. Robinson, 39 Utah, 260, 116 P. 442, 35 L.R.A., N.S., 610, Ann.Cas.1913E, 61; 15 Ruling Case Law, 1063.

"In fact, *a particularly salutary use of the principle of judicial notice is to sustain on appeal, a judgment clearly in favor of the right party,* but as to which there is in the evidence an omission of some necessary fact which is yet indisputable and a matter of common knowledge, and was probably assumed without strict proof for that

very reason. Campbell v. Wood, 116 Mo. 196, 22 S.W. 796. * * *

"Judicial notice is a judicial short cut, a doing away, in the case of evidence, with the formal necessity for evidence, because there is no real necessity for it. * * * The rule in this respect is well stated in 15 R.C.L. 1057, as follows:

" 'It may be stated generally with regard to the question as to what matters are properly of judicial cognizance that, *while the power of judicial notice is to be exercised with caution, courts should take notice of whatever is or ought to be generally known,* * * * for justice does not require that courts profess to be more ignorant than the rest of mankind. This rule enumerates three material requisites: (1) The matter of which a court will take judicial notice must be a matter of common and general knowledge. *The fact that the belief is not universal, however, is not controlling, for there is scarcely any belief that is accepted by every one. Courts take judicial notice of those things which are common knowledge to the majority of mankind, or to those persons familiar with the particular matter in question.* * * * (In this case truck operators and manufacturers.) (2) A matter properly a subject of judicial notice must be "known"; that is, well established and authoritatively settled, not doubtful or uncertain. In every instance the test is whether sufficient notoriety attaches to the fact involved as to make it safe and proper to assume its existence without proof. In harmony with that view it has been said that courts must "judicially recognize whatever has the requisite certainty and notoriety in every field of knowledge, in every walk of practical life." (3) A matter, to be within judicial cognizance, must be known "within the limits of the jurisdiction of the court." ' * * *

"It is truly said that the power of judicial notice is, as to matters claimed

to be matters of general knowledge, one to be used with caution. If there is any doubt whatever, either as to the fact itself or as to its being a matter of common knowledge, evidence should be required; but, if the court is of the certain opinion that these requirements exist, there can properly be no hesitation. In such a case there is, on the one hand, no danger of a wrong conclusion as to the fact—and such danger is the reason for the caution in dispensing with the evidence—and, on the other hand, purely formal and useless proceedings will be avoided.

"Little assistance can be had by a search of the authorities for exactly similar cases."

The second petition for rehearing consists largely of an attempt to take advantage of the lack of knowledge of the prosecutor and the unfortunate misunderstanding on the part of the Assistant Commissioner of Public Safety of the law as expressed in his letter construing the statute herein in question as set forth in the original opinion, but the Attorney General cannot be charged with the ignorance of other parties. As soon as the new regulations promulgated in June 1949 were called to his attention, he confronted this court with them. The promulgation thereof, the existence and dissemination of them by the executive department cannot be successfully disputed. Moreover the court is convinced of the correctness of the departmental symbolized interpretation of the statute, Title 47, § 116.1, subd. 4 (a) and (b), as set forth on the chart contained in the original opinion herein. Moreover the chart is an aid to intelligent understanding of the intent of the law. Clear understanding of the law and its intent leads to better observance and enforcement of the law.

Furthermore this court's check of the matters asserted in the Attorney General's supplemental brief calling for judicial notice are matters of general knowledge among persons who should be familiar therewith. It is a question of applying a correct interpretation of the provisions of Title 47, § 116.1, subd. 4 (a) and (b).

We have found the interpretation in the graphic chart of June 1949 a correct interpretation, the Assistant Commissioner's letter of 1948 an erroneous interpretation, which had clearly been superseded by the chart or symbolized rules and regulations prescribed by the statute. Three years after the correct interpretation of the law has been graphically asserted the defendant cannot avail himself of an overruled interpretation to evade the statute. Now two legislative sessions have passed and no attempt to read into the law the contention the defendant asserts has been made. Hence there is no danger in accepting said matter upon the basis of judicial notice, since it is now well established as having been promulgated by authority of law, Peters v. U. S., supra, and it would be a vain gesture and a senseless procedure to reverse this case and send it back to receive in evidence, proof of the law of which this court should take judicial notice. We know of no basis upon which the state in this case would not be entitled to prevail. The evidence submitted in the record herein when supplemented by the rules and regulations a matter of law, applying to the facts of the case all of which we have taken judicial knowledge, presents a situation where there could be but one outcome in light of the court's interpretation placed upon the statute. And as was said in Varcoe v. Lee, supra, to reverse this case under the conditions merely because of matters of which we should take judicial notice would constitute purely a formal and useless proceeding. We are not unmindful that all the courts hold as does this one, that judicial notice should be resorted to with caution. Nevertheless in a particular case, to prevent and avoid needless litigation, where as herein the meaning and intent of the statute in question is clear, and the rules and regulations contained in the graphic chart of which we take judicial notice expresses the law, presents a proper case for application of the principle of judicial notice. For all the above and foregoing reasons the petition for rehearing and motion for oral argument are accordingly overruled.

POWELL, P. J., and JONES, J., concur.